Kent, Ch. J.
delivered the opinion of the court. 1. The material point raised in this case is, whether the publisher of a libel is responsible to the party libelled, notwithstanding the libel is accompanied with the name of the author.
In the case of Davis v. Lewis, (7 Term Rep. 17.) Lord Kenyon observed, that if a person say that such particular man (naming him) told him certain slander, and that man did in fact tell him so, it is a good defence to an action of slander. There was a similar didum of the judges, in the Earl of Northampton’s Case, (12 Co. 132.) but in neither of these cases was this the point in judgment; and it may well be questioned, whether even this rule as to slanderous words ought not to depend upon the quo animo with which the words with the name of the author are repeated. Words of slander with the name of the author may be repeated with a malicious intent, and with mischievous effect. The public may be ignorant of the worthlessness of the original author, and may be led to attach credit to his name and slander, when both are mentioned by a person of undoubted reputation. There is^ however, a distinction between oral and written or printed slander, which is noticed in all the books; and the latter is deemed much more pernicious, and will not so easily admit of justification. There is no precedent of such a justification in an action for a libel. In Maitland v. Goldney, (2 East, 426.) the court of K. B., with a studied caution, waived the application of the rule in Lord Northampton’s Case, to written slander, and the cause *456 went off on another distinction. No point is more fully established than this, that all who are concerned in a libel, as the composer or procurer of it to be composed, and the publisher and the procurer ^ 1-0 published, are responsible in law. (Hawk. tit. Libel, s. 10.) In King v. Paine, (Mod. 163.) the court, in speaking of the persons who are makers or publishers of a libel, observe, that “ all persons who concur and show their assent or approbation to do an unlawful act are guilty; so that murdering a man’s reputation by a scandalous libel may be compared to murdering his person; for if several are assenting and encouraging a man in the act, though the stroke was given by one, yet all are guilty of homicide.”
The same principles which are here applied to public libels, are applicable to private calumny; and the doctrine which renders all equally liable to an action who are any ways concerned in the unlawful publication of a libel, was very explicitly recognised by this court in the cases of Lewis v. Few, (5 Johns. Rep. 1.) and of Andres v. Wells, (7 Johns. Rep. 260.) and it was well supported by the authorities to which the court in those cases referred. Individual character must be protected, or social happiness and domestic peace are destroyed. It is not sufficient that the printer, by naming the author, gives the party grieved an action against him. This reason of the rule is mentioned in Lord Northampton’s Case, end repeated by Lord Kenyon. But this remedy may afford no consolation and no relief to the injured party. The author may be some vagrant individual who may easily elude process ; and if found, he may be without property to remunerate in damages. It would be no check on a libellous printer, who can' spread the calumny with ease, and with rapiuity, throughout the community. The calumny of the author would fall harmless to the ground, without the aid of the printer. The injury is inflicted by the press, which, like other powerful engines, is mighty for mischief as well as for good. I am satisfied that the proposition contended for on the part of the defendant, is as destitute of foundation in law, as it is repugnant to principles of public policy.
2. The ground on which much of the evidence offered on the part of the defendant was rejected, is too plain to need illustration. It was immaterial or impertinent. It referred to matters happening after the publication of the libel, and which had no concern either with the fact of publication, or with the truth of the charges. To admit testimony so wholly disconnected with the matter in issue, *457 would lead to idle and endless discussion. The view with which that evidence was offered is stated in the case, and it was in that view the evidence was overruled. It was not offered or wanted in any other view. The acts of immorality which the defendant offered to prove were not specified in the notice annexed to the plea, and to admit proof of them would have been taking the plaintiff by surprise.
3. The charge to the jury has been deemed erroneous, because it was observed “ that the jury might presume from the circumstances, that the defendant had been backed by the author, or some other person.” The circumstance from which this might have been inferred was the note to the defendant, with which the libel was introduced, and which stated that the libel had been refused a place in another gazette. This was awakening the attention of the defendant to the nature of the publication, and putting him upon his guard, and enabling him to arm himself against the consequences. He was, therefore, not an object of sympathy as an inadvertent, ignorant, or heedless publisher; in that view the remark was made, and the inference by the jury would have been natural and just. Here was no misdirection in point of law. It was bringing to the attention of the jury one among many other circumstances, to be considered in assessing the damages. There are numerous and many of them slight circumstances which go, in such cases, to vary, in a greater or less degree, the quantum of damages. They are not to be defined and brought to precise rule, because they grow out of each particular case. One of those circumstances was the fact in question, and it was probably mentioned with no great stress, and with only a passing attention. There is no reason to believe that it was a material fact in constituting the amount of the damages. The court perceive ample cause for the verdict in the atrocity of the libel, and the still greater atrocity of the charges spread out at large in the notice of the plea, and in the proof of which the defezidant utterly failed. The court are bound, on this subject, to judge how far the observation was material as well as erroneous. It was said by Mr. Justice Buller, (5 Term Rep. 425.) that though the judge may have made some little mistake in his directions to the jury, yet if justice be done, the court ought not to interfere. The court are always bound, in the exercise of a sound discretion on the subject of new trials, to determine how far the observation of the judge was material and effected the merits of the case. Otherwise, as this court observed *458 in Fleming v. Gilbert, (3 Johns. Rep. 528.) there would be no end to new trials, and the remedy would be worse than the disease.
But, in fact, there was no imputable error in the observation to the jury. It was a circumstance fit and proper for the consideration of the jury, so far as an appeal to their compassion might have been made in favour of a harmless publisher. Suppose the defendant had inserted as a preamble to the libel that he had been indemnified against all the pecuniary consequences of that publication by a person of large fortune in that county. Would not that fact, when admitted in proof before them, be proper for the consideration of the jury in assessing the damages T There is no rule and no case which would exclude it. This was the same case, in a less strong degree, provided the evidence would warrant the inference. It is to be observed, that the fact in question was before the jury. It was in evidence as part of the publication, and no objection made to it as illegal. In Hotchkiss v. Lathrop, (1 Johns. Rep. 286.) the evidence that the defendant was indemnified for publishing the libel was objected to when offered; and on motion for a new trial the court rejected the motion in respect to that ground, by merely saying that the circumstances of the defendant were not known to be bad, and the relevancy of the testimony did not appear. But the court express no opinion on a different state of facts, even as to that point.
The motion on the part of the defendant for a new trial ought, therefore, to be denied.
N. B. There was another cause between the same parties, which, by an agreement between them, was to depend upon the decision of the court on the first point raised and stated in the preceding case; and the plaintiff, therefore, had judgment.
Judgment for the plaintiff.