### ALEXANDER W. WYLLY *vs.* R. & W. KING.

#### *Motion for a New Trial.*

1. A new trial will not be granted, merely for error in the charge of the Court, where justice has been done between the parties.

2. A factor's lien for a general balance, accrued in the life time of his principal, does not attach to property, coming into the factor's possession, after the principal's death, by order of his representative.

3. An Executor *de son tort* can give to a third person no legal control of the decedent's property.

4. An Executor or Administrator cannot create a lien on property of the estate, for a debt due in the life time of the decedent, to the injury of other creditors.

5. On a cause of action accruing after decedent's death, his executor or administrator may sue, either in his own individual, or representative, capacity, at his option.

This was an action brought by plaintiff against the defendants to recover the sum of $2168.60, for so much money had and received to the plaintiff's use, and upon an account stated.

The Special Jury, before whom this cause was tried at the present term, returned a verdict in favor of the plaintiff, for the above sum and costs.

A motion is now made, on the part of defendants, for a new trial, on the following grounds:—

1. Because the verdict is contrary to the evidence.

2. Because the verdict is contrary to Law.

[Wylly *vs.* King.]

**3.** Because his Honor the Judge misdirected the Jury upon the Law, in this:—that he instructed them that the factor's lien, claimed by the defendants in their defence, could not attach, because their possession was acquired after the death of their debtor. And also in this:—that he instructed the Jury that the authority of the plaintiff to the defendants, to apply the cotton to their debt, as shown by the evidence, could not avail for their protection, against the demand, by action, in the individual name of the plaintiff.

The merits of this motion are presented under the last ground above stated; and it is for an alleged misdirection on the part of this Court, in its charge to the Jury, on the Law of this case as applicable to the facts. This, if true, is, without doubt, a good ground to sustain a motion for a new trial; but in determining the question, whether or not a new trial should be awarded, I may here remark, that it is not every error a Court may make in its charge to the Jury, which is deemed sufficient for that purpose. It must clearly appear that injustice has been done the party moving for the new trial, in consequence of the instruction given by the Court to the Jury. But if the Court, looking to all the facts, as they were in evidence before the Jury, is satisfied that Justice and Equity has only been done between the parties, and that the defendant could not have been injured, by the instruction given by the Court to the Jury; it will not set aside the verdict and grant a new trial, merely on the ground of misdirection.—3 *East*, 129; 3 *John.* 528; 10 *John.* 447.

The facts, then, as they were in evidence before the Jury, were, briefly, as follows:—That the defendants, R. & W. King, during the year 1838, were the factors of one John A. Wylly, deceased; and as such factors, were in advance to him, on 30th November, 1838, including interest, $1868.81. That John A. Wylly departed this life, on 3d December, 1838—and that letters of administration on his estate were granted the plaintiff, on 4th March, 1839. That some time in February, 1839, the plaintiff, before obtaining his said letters of administration, took possession of all the estate of John A. Wylly, deceased, and shipped to the defendants twenty-one bales of cotton belonging to said estate, which were subsequently received and sold, by the defendants, for the sum of $2186.60. This amount the defendants, in their account current, acknowledged to have received

[Wylly vs. King.]

from the sale of this cotton—but claim to retain the same, as the factors of John A. Wylly, deceased, to pay and satisfy their general balance of account, due by him in his life time, for advances made. It is for the recovery of this amount, received upon the sale of this cotton, that the present action has been brought.

Now, I have given these facts, and the Law as applicable to them, my most deliberate consideration, since the argument of this motion, and I cannot bring my mind to the conclusion, that the instruction which I gave the Jury, on the question presented under the facts, was erroneous, or that I misdirected them in relation to their duty. I still am of the opinion, that *a factor's general lien, for a general balance of account, incurred in the life time of his principal, does not attach on property which may have belonged to the principal in his life time, but which property did not come into the possession of the factor, until after the death of his principal—and then, by the order and direction of the personal representative of the principal.* The reasons which were advanced in support of this opinion, on the trial of this case before the Special Jury, were—That to entitle a factor to enforce his right of general lien, for a general balance of account, he must have received and become possessed of the property of his principal, *in his character of factor*, and during the life time of his principal—the right itself being founded in usage and custom, and upon the idea of a privity of contract, express or implied, existing between the factor and his principal in his life time.—(Green *vs.* Turner, 4 *Burr.* 2221; Wilkins *vs.* Carmichael, *Douglass*, 97; Kirkham *vs.* Shawcross, 6 *T. R.* 14; 1 *Brevard's S. C. R.* 497; 3 *Kent Com.* 639.)—That death dissolves the relation of principal and factor, or agent, as it does every other relation in life, (8 *Wheat.* 174,) and consequently, any property which he may subsequently receive, from the hands of the personal representative of his deceased principal, he cannot receive in his character of factor to the deceased, but in his character of factor or agent to the personal representative—as against whom, or the general creditors of the estate which he represents, no such right of general lien can be claimed or enforced.—That general liens for a general balance of account, even as between factor and principal in his life time, had always been watched with jealousy, and their extension strictly construed; and that to allow this right to attach to the property, or proceeds received by the defendants,

[Wylly *vs.* King.]

under the facts of the present case, would manifestly be against every principle of Justice and Equity, as it would unsettle the due and legal administration of the estates of deceased persons, especially if insolvent, and be violative of the rights of the creditors of the deceased, whose debts were of superior dignity.—That whatever particular lien the defendants might have, in the property placed in their possession by the personal representative, for their commissions and charges, or advances made to him, on the faith of the property which he had placed in their possession; they could have no legal right to retain the proceeds, for a general balance of account due them by the intestate, in his life time, upon the ground of a general lien. These reasons, and others which might be stated, were it necessary, appear, to my mind at least, conclusive, against the claim of the defendants to a general lien on the money in their hands, for a general balance of account, incurred in the life time of their principal, John A. Wylly; and I cannot, therefore, affirm, that the verdict of the Jury, so far as it has reference to that question, is, in the least, contrary to Law or evidence, or the Justice and Equity of this case.

The only authority which has been brought to the notice of this Court, by the counsel for the defendants, and which would seem, at first sight, to conflict with the views which have just been presented, is the case of Hammonds, *et. al.*, executors of Blight *vs.* Barclay and others, assignees of Fentham, a bankrupt.—(2 *East*, 227.)— I have carefully examined this case, and cannot but think that the principles, which are decided by it, have no application to the question presented by the facts of the present case. The question, of a factors right to enforce a general lien, for a general balance of account, incurred in the life time of his principal, to property which comes into his possession subsequently to the death of his principal, and by the orders of the personal representative, is not presented by the facts of that case—neither is any such question, as it seems to me, decided by the Court. The principle affirmed by that decision, as I apprehend, is, that the assignees of the bankrupt, Fentham, were entitled to be reimbursed out of the proceeds in their hands, for the advances made by the bankrupt, *upon the ground of a particular lien:* the bills having been drawn by the testator, in his life time, upon the faith of the particular ship and cargo consigned—the advances having been made on the faith of that consignment, notwithstanding the pro-

[Wylly *vs.* King.]

perty came into the possession of the bankrupt, Fentham, subsequently to the death of Blight; *but that, even were there a doubt on that point, still the executors, as executors, having, subsequently to the death of their testator, expressly ratified and confirmed his acts, and placed the ship and cargo into the possession of the bankrupt, that he, or his assignees, as against them in their representative character, would be entitled to enforce this particular lien, against the proceeds in their hands.* All the elementary writers on the doctrine of Lien, place the decision of this case, of Hammons *vs.* Barclay, upon this ground, and not upon the ground of a factor's right of general lien, for a general balance of account; and to that extent I do not feel disposed to question the correctness of that decision.—*Montague on Lien,* 68; *Whit. on Lien,* 101, 105, 106; 2 *Livermore on Prin. & Agent,* 37, 38, 48—See also, to the same point, Richardson *vs.* Goss, 3 *Bos. & P.* 123.

The only remaining ground, assumed in support of this motion, is this:—That this Court instructed the Jury, that the authority of the plaintiff to the defendants, to apply the cotton to their own debt, as shewn by the evidence, could not avail for their protection against the demand, by action, in the individual name of the plaintiff. This ground is clearly a virtual abandonment of the claim, which the defendants set up to retain the money in dispute, as founded in their right of general lien, and is an objection to the justice of the verdict, as rendered by the Jury, of a technical character to the form of the action as it has been brought, more than to the merits of the cause, as presented by the testimony. It assumes the fact, First—that it was clearly shewn, by the testimony, that the plaintiff had given the defendants express direction and authority to appropriate the money in their hands, to the extinguishment of the pre-existing debt due them by the intestate in his life time; and, secondly—that having brought the present action in his individual, and not in his representative, capacity, that the plaintiff was not, therefore, entitled to recover.

In reference to the first point, just stated, it is here proper to remark—that the Jury, being the exclusive judges of the testimony, and its weight, were the proper persons to determine, under the facts before them, whether any such *express* authority, as that contended for, was ever given by plaintiff to defendants, or intended to be given,

in relation to the proceeds of the cotton now in dispute. They have clearly, by their verdict, negatived the fact that any such *express* authority was given; and after having duly considered the language and terms of the plaintiff's letters, to defendants, of 23d and 28th February, 1839; and also that of 1st June, 1839, which were in evidence before the Jury, I cannot arrive at any different conclusion. In the first of these letters the following language is used:— " Will you do me the favor to say, what the prospect is as to price, " that *I may judge what amount I can draw after paying up your* " *account, as demands are coming in.*" In the second of these letters, the following language is used:—"I truly regret to learn that there " is any dullness in Sea Island cotton, *and particularly on account of* " *my brothers debts, all of which I was in hopes of paying.*" And in a postscript to this letter, he says:—" *As soon as the cotton is sold,* " *please charge your own account, and send it with account sales.*" In a postscript to the letter of 1st June, 1839, is the following expression:—" *The principal part of the amount in your hands was,* *after paying your portion, intended for Mrs. McNish.*" Now, taking the language as contained in these letters, which were in evidence before the Jury, in connexion, and placing upon it any fair construction, it does seem to me, at least, extremely doubtful, whether, in point of fact, any such authority as that contended for, on the part of the defendants, was ever given, or intended to be given, by the plaintiff. The language of their letters would clearly seem to negative any such direction or authority; and this the Jury have affirmed by their verdict, from which I cannot dissent. But were we to admit, that the plaintiff's letters to defendants, of 26th and 28th February, 1839, and 1st June, 1839, had contained an express direction and authority to defendants, to appropriate the proceeds of the cotton, in dispute, to the general balance of account due them by John A. Wylly, in his life time, so as to leave no room for doubt, or construction; still, the question presents itself, had he, then, any legal authority to make such payment, or appropriation, in violation of the rights of the general creditors of the deceased—and would such payment, if made, be binding upon him in the present action? I think not. First: because, according to the facts, he did not obtain letters of administration on the estate of the deceased, until the 4th March, 1839, and by intermeddling, in any manner, with the estate of the deceased, previous to that time, he made himself, in the eye of

[Wylly *vs.* King.]

the Law, an executor, *de son tort*, and consequently his acts, as such, were neither binding upon himself, nor the estate.   On the 26th and 28th February, 1839, he could have given the defendants no legal power or authority to appropriate the proceeds of the cotton, in the manner contended for by them.—(*Leigh's Nisi Prius*, 958; Mentford, adm'r of Holland, *vs.* Gibson, 4 *East*, 439–441; Howland, Ward & Spring *vs.* Dews, *R. M. Charlton R.* 388; Doe *vs.* Glenn, 1 *Adol. & El.* 49; 28 *English C. L. R.* 33.)  But the second reason is, that an executor or administrator, or other person, acting in a fiduciary character, cannot, by any contract of his own, create a lien, or charge, upon the estate which he represents, in favor of one creditor, for a debt due in the life time of his testator, or intestate, to the injury of the other creditors of the estate, when such charge, or lien, did not exist in the life time of the testator, or intestate.—Cumberland *vs.* Coddington, 3 *John. Chan.* 273; Executors of Fisher *vs.* Executors of Tucker, 1 *McCord's Ch.* 175; O'Neal *vs.* Abney, 2 *Bail. S. C. R.* 317; Foster *vs.* Fuller, 6 *Mass. R.* 59.

The evidence, then, which was before the Jury, being insufficient for the purpose of showing any *express* direction, or authority, from the plaintiff to the defendants, to appropriate the monies in their hands, to the extinguishment of the pre-existing debt, due them by the intestate, in his life time; the form in which the present action has been brought, cannot, as it seems to me, be any insuperable objection to the plaintiff's right to recover, or be of itself a sufficient ground to authorize the granting the present motion.   The rule, I apprehend, is well settled, that where the cause of action accrues, not in the life time of the testator, or intestate, but subsequent to his death, and the money, if recovered, would be assets in the hands of his personal representative, for the payment of debts; he has his option, in bringing an action for its recovery, to declare, either in his own name, or in his representative character; and some of the authorities seem to go so far, as to affirm, that when the cause of action accrues subsequent to the death of the testator, or intestate, *the action can only be maintained by the personal representative, in his own name and right.—Leigh's Nisi Prius*, 997, 998, *Note* (1); 14 *Peters' S. C. R.* 33. The plaintiff's cause of action, in the present case, if any, accrued subsequent to the death of his intestate; and it is not disputed,

but that the money in the hands of the defendants, when recovered, will be assets in the hands of the plaintiff, for the payment of the intestate's debts, according to law. It does not therefore seem to me, that the objection to the form of the present action can, or ought to be, sustained. It is a purely technical objection, which is seldom listened to, on a motion for a new trial.

Without extending the reasons for the refusal of the present motion further, I may, in conclusion, remark that, from a review of all the facts and circumstances of the present case, I feel satisfied that the verdict, which has been rendered by the Jury in the present case, is in accordance with the principles of Justice and Equity, and that Justice has been done between the parties.

The motion for a new trial, therefore, in this case, must be refused; and it is accordingly so ordered.

CHARLTON & WARD, for Plaintiff.
WILLIAM & WM. T. LAW, for Defendants.