NAHUM HAYNES & *ux. versus* NATHAN H. LELAND.

It is a good defence, in an action of slander, to show that the words spoken, were but the repetition of what was uttered by some other person, whose name was given at the time, unless it be proved that the repetition was malicious.

The repetition of slanderous words, spoken by another, at the request of the plaintiff, will not sustain an action.

Where one justifies, that the slanderous words were but the repetition of what was uttered by another, whose name was given at the time, the burden of proof is upon the defendant, whether the defence be presented under the general issue, or by a special plea.

THIS was an action for words spoken slanderously of plaintiff's wife, and was tried at the last term of the Court, before SHEPLEY, J., upon the general issue.

From the testimony of *Geo. Herbert*, it appeared, that he was retained by plaintiffs to bring a suit against one *William Haynes*, for slander of plaintiff's wife, and it was agreed by plaintiff with him, that the defendant should come to the witness' office and state to him what William Haynes had said of plaintiff's wife. Defendant stated to witness the words as set forth in plaintiffs' writ, and said they were spoken by William

Haynes. That defendant had repeatedly since stated on oath that he did not recollect the words spoken by *William*, as alleged in the writ, and stated by him to witness.

It also appeared by one witness, that defendant was a witness, at a church meeting, or meeting of a church committee, and there spoke the words set forth in the writ as spoken of plaintiff's wife by *William Haynes*.

*Moses Stevens* also testified, that defendant told him what William Haynes said of plaintiff's wife, as set forth in the writ.

The jury were instructed, that if they were satisfied from the testimony, that the defendant made the statements to Mr. Herbert, as he had testified, and to the committee of the church as testified to, *at the request of the plaintiffs* ; the plaintiffs could not recover damages of defendant for making such statements, whether they were true or false.

They were also instructed, that if satisfied that he made the statements as testified by Moses Stevens, he would be liable in damages, unless he gave the name of the person from whom he received the story which he related ; and if he did give the author of the story and related it, as told to him, without variation or colouring, even if the story were false, he would not be liable, unless he stated it with a design to slander or injure the plaintiffs ; and the burden of proof was upon the plaintiffs to show that Haynes did not relate to the defendant, the story told by him.

Under which instructions and ruling the jury returned a verdict for defendant, and the plaintiffs filed exceptions.

*Herbert*, with whom was *Hathaway*, for plaintiffs. Malice is an inference of law. If defendant would justify the speaking of the words, he cannot do it under the general issue, but must do it under a special plea. Their falsity is admitted, if their truth be not put in issue. 1 Chitty's Pl. 532.

At the trial, no question was raised about the pleadings. If defendant would justify, as the words of another, he ought to show that he believed the words to be true, 10 B. & C. 263, and uttered them on a justifiable occasion. 3 B. & C. 24 ; 16 Maine, 13 ; 2 East, 426 ; 5 East, 463 ; 2 Bing. N. C. 372.

Some of the English cases assert, that hearing the words from another, and merely repeating them, is a good justification; but that doctrine has been denied in the U. States, and more recently repudiated in England. 2 Greenl. Ev. § 424, page 405, note 2.

The instruction as to the burden of proof was wrong; it was for the defendant to show, that the person named really spoke the words. The plaintiff could not prove Haynes did not speak the words, for that would require him to prove a negative. And whether they were spoken with a design to injure the plaintiff, was not for the jury to settle. 5 Bingh. 329; 2 Greenl. Ev. § 423; 2 Bingh. 372.

The whole doctrine, as to the effect of giving up the author, is settled in 4 Wend. 659 and 8 Wend. 602.

*Robinson*, for defendant.

There is no occasion to say any thing as to the two first counts in the writ, and the instructions upon them, as they were communications, made at the request of the plaintiff, one of them when defendant was a witness in a lawful proceeding. As to the remaining part of the case, he maintained, that slander imports a voluntary act to injure. On the last occasion alluded to in the evidence, there was manifestly no design to slander or injure the plaintiff. Stevens was a brother of plaintiff's wife, and really sought the information.

In a former period, it was held, that if the author was given of the slanderous words, it would be a justification. Recently the defendant has been held to a little further than that, but not further than the case here presented. The jury were required to find the words were spoken without a slanderous design, or intent to injure, and if that be not a justification, it would be impossible to conceive of a case where a defence could be interposed. 2 Greenl. Ev. § 418; 2 Black. Com. 124, note 4, (N. Y. ed. of 1822,); 2 Stark. Ev. 421.

It is for the jury to decide with what intent the words were spoken. 16 Maine, 14.

The burden of proof is on the plaintiff to prove the story false as related.

The opinion of the Court, (WHITMAN, C. J. dissenting,) was delivered by

SHEPLEY, J. — One question presented by the instructions is, whether the repetition of slanderous words spoken by another person may be justified, if the name of such other person, as the author of them, be stated at the time.

In the latter part of the fourth resolution, in the Earl of Northampton's case, 12 Rep. 132, the law is stated, that " for slander of a common person, if J. S. publish, that he hath heard J. N. say, that J. G. was a traitor or thief, in an action of the case, if the truth be such, he may justify. But if J. S. publish, that he hath heard generally, without a certain author, that J. G. was a traitor or thief, there an action *sur le case* lieth against J. S. for this, that he hath not given to the party grieved any cause of action against any but himself, who published the words, although that in truth he might hear them."

This doctrine is recognized in *Crawford* v. *Middleton*, 1 Lev. 82.

In the case of *Brook* v. *Montague*, 1 Cro. Jac. 91, Coke cited the case of parson Prick, who in a sermon recited a story out of Fox's Martyrologie, that one Greenwood being a perjured person and a great persecutor had great plagues inflicted upon him and was killed by the hand of God, whereas in truth he never was so plagued, and was himself present at the sermon; and he brought an action for calling him a perjured person. WRAY, C. J. delivered the law to the jury, "that it being delivered but as a story, and not with any malice or intention to slander any, he was not guilty of the words maliciously, and so was found not guilty." " And Popham affirmed it to be good law, when he delivers matter after his occasion as matter of story, and not with any intent to slander any."

The rule stated in Earl of Northampton's case appears to have been regarded by the legal profession as so fully established, that it was esteemed to be necessary to allege in the declaration, that the person named as the author of the slanderous words did not in fact use them. *Morrison* v. *Cade*,

Cro. Jac. 162; *Lewis* v. *Walter, idem,* 406. In the latter case a verdict having been found for the plaintiff, a motion in arrest was made alleging, that the words were not actionable, first, because they were but the report of the speech of another and not of his own speech. On this point it was adjudged for the plaintiff and affirmed in a writ of error, " where the Court was satisfied in this point, that the report of the speech of another, who never used such words, is chargeable." The law at this time appears to have been regarded as too well established to be questioned, that the action could not in such case be supported without such an allegation sustained by proof.

In the case of *Davis* v. *Lewis,* 7 T. R. 17, the rule as first stated was repeated, and re-affirmed to be the law by Lord Kenyon.

In the case of *Maitland* v. *Goldney,* 2 East, 426, the rule so far as it respects oral slander was again recognized; and again in the case *Woolnorth* v. *Meadows,* 5 East, 463.

In the case of *Lewis* v. *Walter,* 4 B. & A., in an action on the case for a libel printed in a newspaper, *it was held* not to be applicable, and some doubts were for the first time expressed respecting the rule as applicable to oral slander without some qualification. BAYLEY, J. observed, " it must not therefore be taken as a general rule, even in oral slander, that the *malicious* repetition of it may be justified, if the name of the author be given at the time." ABBOTT, C. J. observed, — " Nor am I prepared to say, that this is matter of defence upon a plea in bar, for it cannot be an answer to the charge of *malice,* which may exist in the case of repetition as well as invention ; and if we hold it to be a bar, that question would be altogether withdrawn from the consideration of the jury. But, if instead of pleading it, it be given in evidence under the general issue, then the question, whether it were repeated maliciously and from a design to slander or not, would be left to the jury, who might then find their verdict upon the whole case." The rule appears here again to be admitted with the qualification, that the defence should be presented under the general issue,

and that it should appear by the finding of the jury, that the repetition was not maliciously made.

In *McGregor* v. *Thwaites*, 3 B. & C. 24, the action was for a libel printed in a newspaper. BAYLEY, J. remarked, " according to the rule laid down in Lord Northampton's case, the party is excused, because by naming the person, from whom he heard the slander, he gives the party slandered an action against another, but here the defendants gave the plaintiff no action against any other person." HOLROYD, J., speaking of the opinion of Lord Ellenborough in the case of *Maitland* v. *Goldney*, remarked, " the opinion of that learned Judge was, that an action would lie against a person, who *maliciously* repeated slander, even though he name his author at the time."

LITTLEDALE, J. observed, " Now if the law as to the repetition of oral slander, were to he propounded for the first time to-day, the propriety of the rule laid down in Lord Northampton's case might perhaps admit of some doubt."

In *De Crespigney* v. *Wellesley*, 5 Bing. 392, the action was for a libel. The distinction between oral slander and libel in this respect, appears to have been finally and fully established. BEST, C. J. observed, that " the reason, which Lord Coke gives, why in the case of oral slander, you should name the author, proves, that you must not be allowed to publish written calumny." He says, the Court, " if we were to admit, what we beg not to be considered as admitting, that in oral slander, when a man at the time of speaking the words, names the person who told him, what he relates, he may plead to an action brought against him, that the person, whom he names, did tell him what he related ; such a justification cannot be pleaded to an action for the republication of a libel." His remarks in the opinion in this case have been referred to as repudiating the whole doctrine as it respects oral slander, but his meaning rather appears to have been, only to deny or to refuse to admit, that such a defence could be good, if presented by a plea in bar, which would withdraw from the jury the consideration, whether the words were repeated maliciously. The note referred to for the same purpose, in 2 Greenl. Ev. § 424, note

2, when carefully noticed will be found to state, that it was formerly held to be a good justification, "and therefore pleadable in bar." " But this doctrine, (id est, that it was a good justification and therefore pleadable in bar,) has been solemnly denied in the United States, and has of late been repudiated in England." If this be not the sense intended to be conveyed in the note, it could not well be sustained by the cases cited to support it. Thus explained, the doctrine is left as it was in the case of Lewis v. Walter, that proof of a repetition, naming the author of the words at the time of repeating them, may be made under the general issue, and if found to have been done without malice, it would operate as a good defence to the action. Such appears to have been the law in England, as exhibited by the decisions of her tribunals, until the year 1829.

That a repetition of slanderous words with the name of their author at the time, might be justified, was stated also to be the law in elementary treatises. Starkie on Slander, c. 13, 2 ; Chitty's Pl. 506 ; 3 Sel. N. P. 1060.

The question has been discussed in tribunals in this country. In the case of Dole v. Lyon, 10 Johns. 447, which was an action for a libel, KENT, C. J. observed, that it might be " well questioned, whether even this rule as to slanderous words ought not to depend upon the quo animo, with which the words with the name of the author are repeated;" and he gave his reasons for it, while he stated, that the rule did not apply to actions for libel. This was, but an anticipation of the modification of the rule, which took place several years afterward in England. The rule, as thus qualified, was not denied ; and it does not appear to have been substantially varied since, by the decisions of the tribunals in that State. In the case of Mapes v. Weeks, 4 Wend. 659, it was decided in accordance with the long established doctrine, that a defendant, who had not named the author at the time, could not be permitted to prove that another person told him the story.

In the case of Inman v. Foster, 8 Wend. 602, the rule by implication was admitted. SAVAGE, C. J. in the commence-

ment of the opinion observed, "I must take it for granted, that the defendant did not name his author, when he uttered the slanderous words."

In other States, the rule as originally stated or in a modified form, appears to have been received as the law, allowing in some of the cases, the question to be settled by the jury, whether the repetition of the slanderous words naming the author of them, had been maliciously made. *Miller* v. *Kerr*, 2 M'Cord, 285 ; *Trabue* v. *Mayo*, 3 Dana, 138; *Church* v. *Bridgeman*, 6 Mis. 190 ; *Jones* v. *Chapman*, 5 Blackf. 88.

It was rejected in the case of *Haines* v. *Welling*, 7 Ham. 253.

In the case of *McPherson* v. *Daniels*, 10 B. & C. 263, three justices, BAYLEY, LITTLEDALE and PARKE, composing the court for the decision of the case, expressed opinions unfavorable to the admission of the rule, without further modifications. BAYLEY, J. observed at the conclusion of his discussion, "upon the whole I am of opinion, that a man cannot by law justify the repetition of slander by merely naming the person who uttered it ; he must also shew, that he repeated it on a justifiable occasion, and believed it to be true."

LITTLEDALE, J. speaking of the fourth resolution in Lord Northampton's case said, " that resolution has been frequently referred to within the last thirty years, and though not expressly overruled, has been generally disapproved of." " The fourth resolution, however, in terms perhaps does not go the length of saying, that a defendant may justify the repetition of slander, generally, but only, that he may justify under certain circumstances. Assuming that it imports, that a defendant may justify the repetition of slander, generally, by showing that he named the original author, I think that is not law."

PARKE, J. said, " it is not absolutely necessary to determine in this case, whether the latter part of the fourth resolution in Northampton's case be good law, because, assuming the rule there laid down to be correct, this plea is bad for two reasons." He subsequently stated, that he was of opinion it " cannot be law," and he denied that there was any distinction in this respect between oral and written slander.

It is not a little remarkable, that nearly all the remarks, which have been made, complaining that the fourth resolution in Lord Northampton's case was extra-judicial, were themselves of a like character.

What practical rule can be obtained from the opinions expressed in the case of *McPherson* v. *Daniels?*   If any could be derived from the observations of Mr. Justice PARKE, it would rather seem to be that all the previous decisions were to be considered as overruled, and that the well established distinction in this respect between oral and written or printed slander, was to be considered as abolished.   And yet this would be at variance with the opinion of Mr. Justice BAYLEY as expressed in the same case, and also with that of Mr. Justice LITTLEDALE, who denies that the rule should be received as a general proposition expressive of the law, while he admits " that he may justify under certain circumstances" without stating, what those circumstances are or affording any definite rule for a decision of the question.

Mr. Justice BAYLEY presents a rule for decision, but one which does not appear to have been approved by his associates. One part of his rule requires, that the person repeating the slanderous report should believe it to be true, to enable him to justify it.  How could he ever prove the convictions of his own mind; his belief or disbelief, unless it had been expressed at the time?   If he expressed his belief of its truth then, it would surely be better suited to injure the person, and be more indicative of an unfriendly spirit or of malice, than an expression of his disbelief of it.   If one desirous of ascertaining the character of a professional man, or that of a merchant for credit or integrity, or that of a mechanic for skill or honesty, should inquire respecting it, and be informed in answer of a story told by a person named, of a slanderous character, with an expression of his own opinion that it was unworthy of credit, is his informant to be deemed guilty of slander and unable to justify himself, when he might have been deemed innocent and able to justify himself, if he had expressed an opinion that the story was true?

This would certainly be a new element, and a novel rule to introduce into the administration of justice. The other part of his proposed rule, that "he must also show, that he repeated it on a justifiable occasion," when applied in practice leaves undecided, what is a justifiable occasion. Perhaps a satisfactory answer might be, any occasion, in which from all the circumstances disclosed, the jury may infer, that it was done without malice or an intention to injure. This would be the rule as modified in accordance with the opinions of ABBOTT, BEST and KENT. To receive it thus, will be to afford a rule, which can be applied in the practical administration, of justice, without difficulty. One, that will enable a person to obtain redress from those, who have repeated and named at the time, the author of slanderous words, with malice or an intention to injure, while it will protect those, who have done so without any such intention. The rule applied at the trial appears to be the one, which can be ascertained most satisfactorily from the decided cases, and to be best suited for the correct administration of justice.

When an action for slander, can only be maintained by proof of special damage, it has been decided, that such damage must appear to have been occasioned by the words spoken by the defendant, and not by a repetition of them by another person. *Ward* v. *Weeks*, 7 Bing. 211 ; *Stevens* v. *Hartwell*, 11 Metc. 542. The opinion in each of those cases, expresses an approval of the case of *McPherson* v. *Daniels*. But in neither of them are the practical difficulties here suggested, noticed or obviated.

It is insisted, that this defence could not be properly presented under the general issue. It has already been shown, that serious doubts have been expressed in the more recent decisions whether such a defence could be presented by a special plea. The earlier cases allowed it to be presented by special plea or under the general issue. *Brook* v. *Montague*, Cro. Jac. 91 ; *Smith* v. *Richardson*, Willes, 20 ; *Lewis* v. *Walter*, 4 B. & A. 605. There would seem to be no good reason, why it might not still be presented by a special plea containing an allegation, that the repetition of the words was made without any inten-

tion to slander or injure the plaintiff, as well as under the general issue.

The instructions respecting the repetition of slanderous words spoken by another, made at the request of the plaintiff, are not the subject of complaint. There could be no just cause for it.

The jury were instructed, that the burden of proof was upon the plaintiffs, to show that the person named as the author of the slanderous words, did not relate them to the defendant. If the mere fact of naming the author of the slanderous words at the time, were held to be a justification, on the ground that such person was shown to be the one, against whom the action should be brought, the burden of proof would rest upon the plaintiff to prove the falsehood of that statement made by the defendant or he would fail to establish the essential ingredient of malice. The falsehood of the statement being the element, from which alone malice could be inferred. Hence, as before stated, while such was esteemed to be the rule of law, and the declaration contained an allegation, that the person named as the author did not make use of the words imputed to him, the burden of proof would be upon the plaintiff. Nor does the objection seem to have great weight, that the plaintiff would be required to prove a negative. For it would be necessary for him before the commencement of his suit, to ascertain with precision the words spoken, and by doing so, he would become informed of the name of the person, who was stated to be the author of them. But when the ground of defence is carefully examined, it will be perceived to be, that he did but repeat the words of another, that he named the author at the time, and that he did so, without an intention to slander or injure. These positions he must establish by proof. A failure to establish the first position, leaves him without a justification. Falsehood then appears, and malice is inferred from it. Should he establish the truth of the two first positions, malice can only be inferred from the circumstances, under which the repetition was made. The burden of proof would seem therefore to rest properly upon the defendant, whether the defence be presented

under the general issue, or by a special plea. _Miller_ v. _Kerr_, 2 M'Cord, 285; _Church_ v. _Bridgeman_, 6 Mis. 190. The instructions respecting the burden of proof being erroneous, a new trial must be granted.

*Exceptions sustained, and new trial granted.*

Dissenting opinion by

WHITMAN, C. J.— This case is before us upon exceptions taken to the instructions of the Court to the jury at the trial. And my brethren have agreed that the exceptions, upon one point, must be sustained. I understand them to have agreed further, in the opinion, that, in an action of slander, it is a good defence to show that the words spoken were but the re-petition of what was uttered by some other person, whose name was given at the time, unless it were proved that the re-petition was malicious. This position is supposed to be fully sustained by authority. In the case of Lord Northampton, 12 Coke, 134, it is reported to have been so resolved, that, " in a private action for slander of a common person, if J. S. publish, that he hath heard J. N. say, that J. S. was a traitor or thief, in an action on the case, if the truth be such, he may justify." And in the first of Comyn, 264, it is said, " if a man say, A told me B stole, &c. when A did really say so, an action lies against A but not against the relator." And Lord Kenyon, in _Davis_ v. _Lewes_, 7 T. R. 117, incidentally held such to be the Law. And lord Ellenborough seems, in _Wool-north_ v. _Meadows_, 5 East, 463, to recognize such to be the law.

This must be admitted to be somewhat of a formidable ar-ray of authorities in support of the principle. But no one, now, will admit it to be law without qualification. My breth-ren, I understand, would qualify it, by admitting, if proof be made of express malice on the part of the relator, that the repetition could not be justified. And others, who have felt constrained to admit the rule, have found it necessary to sur-mise qualifications. Mr. Justice JOHNSON, in _Miller_ v. _Kerr_, 2 M'Cord, in delivering the opinion of the Court, comes to the conclusion, that " this rule is only to protect one, who

Haynes *v.* Leland.

without malice, and for purposes necessary to the very existence of society, inquires into and investigates the characters of men." Thus limited, no fault perhaps could be found with the rule.

But the unreasonableness of the resolution as found in 12 Coke, and from the authority of that case doubtless repeated by Comyn, and assented to by Lord Kenyon, has been so striking that, in England, it is at this day entirely repudiated. In *De Crespigney* v. *Wellesly*, 5 Bing. 392, C. J. BEST remarked, that "if even we were to admit, what we beg not to be considered as admitting, that in oral slander, when a man at the time of his speaking the words names the person, who told him what he relates, he may plead to an action brought against him, that the person whom he named did tell him what he related, such a justification cannot be pleaded in an action for the republication of a libel." In *Bennett* v. *Bennett*, 6 of C. & P. 552, it was held, that "it is no justification for him (the defendant,) that he, at the time he repeats the slander, gives up the name of the person from whom he heard it." It was said, however, in that case, that if such proof were made it might be admitted in mitigation of damages. In *McPherson* v. *Daniels*, 10 B. & C. 263, the subject underwent a thorough revision by Judges BAYLEY, LITTLEDALE and PARKE, the Chief Justice not being present, and their unanimous opinion was, that the *dictum* in Lord Northampton's case was not law. And TINDAL, C. J. in *Ward* v. *Weeks*, 7 Bing. 211, in delivering the opinion of the Court of Common Pleas, remarked, that "the resolution in Lord Northampton's case, which has at all times been looked upon with disapprobation, has, in the recent case of *McPherson* v. *Daniels*, 10 B. & C. 263, been in effect overruled by the Court of King's Bench, and with the judgment of that court, upon that occasion, we entirely concur."

In some of the United States, particularly Indiana, Kentucky and Mississippi, the rule has been considered, and perhaps admitted under modifications. But it may be doubted whether it has any where, this side of the Atlantic, been applied

in the broad terms presented in 12 R. It is certain that in Ohio, it has been rejected. *Haines* v. *Willing*, 7 Ham. 253. In New York it can scarcely be regarded otherwise than as over-ruled. The marginal abstract, by the Reporter, in *Inman* v. *Foster*, 8 Wend. 602, is, that " it is no defence, nor can it be given in evidence in mitigation of damages, that the defendant, at the time of the speaking the words gave his author, and was in fact told by another what he uttered against the plaintiff." The case, however, in those terms, does not directly decide the point ; but the reasoning of the Chief Justice, in delivering the opinion, strongly tends to that effect ; so much so that the Reporter understood such to be the decision. And the author of the digest of the N. Y. Reports, published in 1841, nine years after the publication of the case, adopted the above abstract as the decision in that case. And the abstract, and adoption of it in the digest have stood, so far as is known, uncontroverted in that State to this time ; and after what has transpired in England, who can doubt that such is to be regarded as the established law on the subject in that State.

Mr. Greenleaf, in his Treatise on Evidence, vol. 2, in a note to § 424, holds this language : — " The fact that the defendant heard the words from another, whose name he mentioned at the time of speaking them, was formerly held a good justification, and therefore pleadable in bar ;" " but this doctrine has been solemnly denied in the United States."

There has been no adjudged case, nor any *dicta* up to this time by any of the Judges of Massachusetts or Maine, recognizing the rule as laid down in Lord Northampton's case as good law, and it seems to me, that the decision, now for the first time proposed to be made in this case, will be received with surprise.