ACTION for libel alleged to have been published by the defendant in two newspapers in the city of Wilmington, the DelawareRepublican and the Delaware Gazatte, on the 27th day of November, 1878, and which was set out in full in the first count in the declaration as follows:
 "To THE PUBLIC.
"In consequence of repeated and persistent attacks upon the Delaware State Fire and Marine Insurance Company and its officers, by theEvery Evening and Commercial, through its editor, William T. Croasdale, a miserable specimen of humanity, who, on the slightest pretense or provocation, attacks private character, business interests, the sanctity of home and desecrates the *Page 54 
memory of the dead, we are obliged to break our silence and appeal to the public, because of an attempt on the part of this blackguard to blast our characters and ruin our business. We have consulted lawyers in regard to his publications, and the only consolation we received was that we might go into law, spend our money and prosecute the EveryEvening Company and get judgment for damages; but in their opinion the judgment would not be worth one cent, for they believed the company was bankrupt.
"In Pennsylvania and New Jersey the libel laws are severe but just, and had we his (Croasdale's) miserable carcass in either of those States, we would very soon have him looking through grates and bars, where he should have been long ago.
"His editorial of November 21st is a tissue of infamous falsehoods. Let us examine his statement in detail: In the first place, he states that the Delaware State Fire and Marine Insurance Company is a fraud, without the shadow of a right to exist, notwithstanding he knows that it is working under a charter obtained from the legislature of the State of Delaware. Secondly, that Myers is a professional organizer of fraudulent insurance companies. This is false, but as Mr. Myers is absent from home, we leave him to make his own defence. In the third place, he speaks of being prosecuted for a libel upon the company, and we postponed the case for months, and finally made overtures to theEvery Evening Company for settlement. This is false in every particular. During the preliminary examination of this company, and previous to its purchase by its present owners, Mr. Bright and Dr. Tantum both said to their Board of Directors, `Stop the suit for libel, as we shall drop it if we purchase the the company's interest.' Subsequently, the purchase and transfer were made, and we dropped the suit, or, in other words, failed to appear in the case; the course pursued by us in this instance was the same that has marked or guided us in all our private and business relations through life, that has been to scrupulously avoid all controversies, quarrels and law-suits. But a point has been reached in this case where forbearance ceases to be a virtue; we cannot reach this miscreant through the ordinary channels of *Page 55 
law, and there is too much Quakerism in our composition to play the Gallagher game and give him a severe drubbing and leave him in the gutter as Mr. Gallagher did; then the only course left us is to take up the pen, and with our consciousness of being in the right, we believe it will prove mightier than the sword.
"Fourthly, in regard to the Maryland department revoking our license in that State is false. The Commissioner examined our company a year ago and found sufficient assets to warrant him in giving us a license to do business in that State; that license has not been revoked, but of our own choice we are closing up all our stock business in Maryland, because of its unprofitableness; intending in the future to do only a mutual business there. Both the Ohio and Maryland Commissioners expressed surprise, after examining the company, at the amount of its assets; they remarked that we were as strong financially, had as much assets to our liabilities, as any company in the country, not excepting the great Ætna, of Hartford, with its nearly seven millions of dollars.
"Below is a statement of the condition of our company at the present time; relying on a generous public,
 "We remain yours truly, "WM. BRIGHT, J.R. TANTUM, JOHN WOOD, D.T. HAWRANS."
George W. Vernon, editor of the Delaware Republican, was the first witness called for the plaintiff, who proved that it was brought to him by Dr. Joseph R. Tantum, at whose request it was published in that newspaper, who was next called as a witness for the plaintiff, and proved that he wrote the article in his own house, and afterwards he read it to Mr. Bright, who said it was a right good piece, but he had nothing to do with the writing or publication of it, which was done by himself alone. His impression, however, was, that after he had read it to him, he told him that he was going to publish it; that he signed the *Page 56 
name of Mr. Bright to it, but did not authorize him to do it, and also signed the names of all the other subscribers, as well as his own to it. Mr. Bright was then the president and he the vice-president of the Delaware State Fire and Marine Insurance Company, and that he did not see Mr. Bright again until they were arrested in these suits, and he then regretted that the article had been published, and said he had not authorized the publication of it.
A.L. Richardson was also sworn as a witness, and proved that he was the business manager, and Mr. Croasdale, the plaintiff, was the editor of the newspaper in that city named the Every Evening. The question was then asked him by the counsel calling him, what was his salary as the editor of it?
The counsel for the defendant objected to the admissibility of the question, and the court sustained the objection. He was then asked what was his rank and standing as an editor?
Lore for the defendant. The general good character of the plaintiff cannot be given in evidence by him in such a case as this, although his standing and condition in life may be, with a view to the measure of damages, and it was so held in this court in the case of Parke v. Blackiston, 3 Harr., 373. Bird, contra,
cited Towns, on Sland. and Lib., 656, 6 Conn., 24.
The Court ruled that evidence of the plaintiff's general good character could not be admitted, but of his rank and standing and condition in life was admissible.
After the plaintiff had closed his evidence, Lore, for the defendant, submitted a motion for a non-suit on the ground that the publication of the libel by the defendant had not been proved, which was the gist of the action, and the sole issue in it, as the only plea in it was that of not guilty. 2 Greenl. Ev., § 401; Towns, on Sland. and Lib., § 317; Harding v. Greening, 4 E.C.L., Rep. 32.
Bates for the plaintiff. Any agency or participation whatever, however slight, on the part of the defendant in the publication *Page 57 
of it, would be sufficient to sustain the issue on the part of the plaintiff for publication is the making known of the contents of the libel to any one. Towns. on Sland. and Lib., §§ 115, 373, 400, 10 Johns., 447, 6 Cush., 71. And if, in the peculiar relation in which he then stood in the insurance company to Dr. Tantum, and fully sympathizing and concurring with him, as joint agents and officers of it in their mutual animosity against the plaintiff, and knew and fully approved of the libel after it had been written by him, and knew, as he must have known, without having been so informed by him, that he intended to publish it, and said or did nothing to prevent it, he must be held not only to have acquiesced, but directly to have participated with him in the publication of it, so much in fact as to make it the joint act of both of them.
Whitely for the defendant. The publication of it cannot be inferred. 4 E.C.L. Rep., 32. The proof of that fact must be such as would be sufficient to convict the defendant on the trial of an indictment for the libel. What will constitute a publication of a libel is a question of law for the court, but the fact of publication is a question for the jury. 2 Harr., 46.
The Court overruled the motion for a non-suit.
The counsel for the defendant declined to call any witnesses, and after argument on the facts proved by each of them on both sides,
The Court,
This is an action for libel by William T. Croasdale, the plaintiff, against William Bright, the defendant, to recover damages for the alleged publication by him of the paper which had been read in evidence to you as such by the counsel for the plaintiff. A libel has been defined by this court to be a malicious publication in printing, writing, signs or pictures imputing to another something which has a tendency to injure his reputation, to disgrace or degrade him in society, to lower him in the esteem and opinion of the world, or to bring him into public hatred, contempt or *Page 58 
ridicule. Layton v. Harris, 3 Harr., 406. And in this case we can have no hestitation in saying to you that this paper is a libel, for it comes within the definition which I have just read to you, and must be considered a libel and actionable as such, so far as that matter merely is concerned or involved as a question in the case.
But the more important and controverted question in the case is, did the defendant publish it in the only manner alleged and complained of by the plaintiff, in the two newspapers mentioned, the DelawareRepublican and the Delaware Gazette, in the city of Wilmington? Before you can find a verdict against the defendant, you must be satisfied from the proof in the case, and from that alone, that he authorized, adopted, or recognized the publication of it, though made by another; for, if he did authorize, adopt, or recognize the publication of it, he is as liable in this action for it as if he had delivered it to the newspapers himself, and it makes no difference that he did not sign his name to it. If a paper is a libel, it is none the less so because no name is signed to it, if it is proved that it was put in circulation, directly or indirectly by the person charged with the publication of it.
In refusing to non-suit the plaintiff, the court did not say, or mean to say, or intimate, that there was sufficient proof before you to connect the defendant with the publication of it, but we simply meant that there seemed to us to be some proof as to that fact that should go to the jury to be considered and determined by them, and whenever there is any material evidence, however slight, in support of the declaration, it is the practice of the court to decline to non-suit the plaintiff in any action, and which is a matter always addressed to their discretion; but leaving it to the jury to say, as we now do in this case, whether you consider after all of the proof which you have heard, that there is any such evidence in the case, and if any, whether it is sufficient to warrant you in finding a verdict against the defendant. Upon this point you are not to be influenced or governed by any inference to be drawn from the bare fact that we did not non-suit the plaintiff, but by your own judgment alone in reference to that *Page 59 
matter; for you only are to try this, as well as all other questions of fact in the case. If you do not find, from all the evidence before you that the defendant was a participator in the fact of publication, your verdict should be for him, but should you so find, the plaintiff will be entitled to your verdict.
If you find for the plaintiff, the paper being libellous and tending to villify, defame, and injure him, it is to be treated by you as malicious, and he is entitled to recover damages for it, there being no plea by the defendant but that of not guilty. In a case of malicious libel, damages are in the discretion of the jury, who, however, will always be guided in their determination of the amount by circumstances. Where actual damage is proved (which is not the case here) that fact may be taken into consideration. Where no sort of excuse or palliation is proved, and the libel is a gross one, that should be taken into account by way of enhancement; but, where any such does appear, it should by no means be disregarded. The paper proved by the plaintiff itself shows that there was something done by the newspaper with which the plaintiff is connected, by way of attack on the insurance company and its officers, of whom the defendant is chief. Now, in this case the defendant, under the plea of not guilty, would not be allowed to offer any sort of proof whatever in mitigation of damages, but the paper which is laid before you by the plaintiff, and for the publication of which he asks you to give him a verdict, shows that it was made and published because of what is here alleged to be "the repeated and persistent attacks upon the Delaware State Mutual Fire and Marine Insurance Company, and its officers, by the Every Evening,
through its editor, William T. Croasdale." You have, therefore, just the same case as if that had not appeared in the paper; and yet the defendant, under a proper plea, had produced proof to you that this libel was published in consequence of these persistent attacks upon them as officers of that corporation by the plaintiff in this action. What the attacks were, of course, we do not know, for there is no proof of them, but there was no effort on the part of the plaintiff to deny that these attacks were made, but he has submitted a paper to you which speaks of these "persistent attacks." *Page 60 
This, independent of anything of that kind, would appear to be a gross and outrageous libel, but you are to take these things into consideration. The ease is before you to be disposed of; as we have stated to you in a case of malicious libel, the damages are in the discretion of the jury, under the circumstances of the case, and the obligation of the oath which you have taken.
The defendant had a verdict.