## Mapes vs. Weeks.

In *slander*, evidence that the defendant had been told by a third person that the plaintiff was guilty of the crime imputed to him is inadmissible.

So evidence of *general reports* that the defendant is guilty of the imputed offence is inadmissible, as well in mitigation as in justification.

*It seems*, however, that such reports could not be received in evidence in mitigation, under circumstances shewing an absence of malice and an admission of the falsity of the charge,

This was an action of *slander* tried at the Orange circuit in April, 1829, before the Hon. James Emott, one of the circuit judges.

The words charged in the declaration to have been spoken were the following : " He is a thief and I can prove it—he stole a sheep from Solomon Conkling and I can prove it by his (plaintiff's) boys—I wonder how you can vote for him, he is a thief—he is a robber of hen-roosts and I can prove it." The defendant pleaded the *general issue.*

On the trial of the cause, it was proved that at the general election in November, 1828, the plaintiff was a candidate for the office of a justice of the peace, and that the defendant attempted to prevent his election. To one elector he observed that he was surprised that he supported the plaintiff for the office of a justice of the peace, asking, "Will you support a man who has stolen sheep and hens ? he has stolen Solomon Conkling's sheep or lamb and Donaldson's hens ;" adding that he could prove what he said by John Archer's boy. To another elector he said that he would not vote for the plaintiff or any other man who was guilty of robbing hen-roosts and stealing sheep. It was observed by some one that there might be a mistake. The defendant said no ; he stole Solomon Conklin's sheep, and he could prove it by John Archer. The plaintiff lost his election. After the polls closed, the defendant repeatedly renewed the charges, and upbraided the electors for voting for the plaintiff. On the part of the defendant, it was shewn that the defendant uniformly said, when he charged the plaintiff with those crimes, that Archer told him so.

The defendant went into proof of the general character of the plaintiff; on which subject there was a contrariety of evidence. From the testimony of the defendant's witnesses, it appeared that of late as much was not said against the plaintiff's character as formerly. It was also proved that the plaintiff, after the election, threatened revenge against the defendant; saying that he would follow him as long as he had a shilling, and that he would be a thorn in his side as long as he lived.

The defendant offered to prove that Archer had told him what he had charged the plaintiff with; that from general report in the town of Monroe, (the residence of the plaintiff,) it was suspected that the plaintiff had stolen a sheep of Solomon Conkling; that it was common report in that town, and had been for ten or fifteen years past, that the plaintiff had stolen sheep and hens; and that ten or twelve years before the trial, the general report in the town was, that the plaintiff had been concerned in a petit larceny; which evidence was refused to be received by the judge.

The judge charged the jury that the character sustained by the plaintiff in former years was not to be regarded by them; that if they were satisfied that it was good at the time of the speaking of the words, they ought to disregard the evidence shewing that it was bad a number of years since; that the allegation of the defendant that Archer had told him that the plaintiff was guilty of the offences charged, made nothing in favor of the defendant, either in justification or mitigation, but was rather cause for aggravating damages, as the defendant, by publishing the charges, had endorsed the slander of Archer. He further told them, that if they believed that the plaintiff intended to *persecute* the defendant, such determination ought to go in mitigation of damages; and added, that although he thought it the duty of the plaintiff to prosecute this suit, he did not consider it a case for heavy damages. The jury found a verdict for the plaintiff with $325 damages, which was now moved to be set aside.

*S. Stevens,* for defendant. The proof offered by the defendant, that Archer had told him what he alleged against the plaintiff, ought to have been received; for, on shewing

that he had been so told, the plaintiff would not have been

entitled to recover, if the jury were satisfied from the proof that the defendant had in this manner qualified his charges. The judge erred in charging the jury that the declaration of the defendant that he had been so told by Archer was an aggravation of the slander. (5 East, 463. 1 Holt, 534. 3 Common Law R. 177. The proof of the general reputation of the plaintiff, for 10 or 15 years that he had stolen sheep and hens, was admissible in mitigation of damages; it is general rumour which establishes character. (2 Camp. 251. 1 Maule. & Sel. 285. 1 Holt's R. 307. Anthons' N. P. 185. 3 Common Law R. 115. n. 11. Starkie on Slander, 406, 460.)

*J. L. Wendell*, for the plaintiff. Proof that the defendant had been told by another that the plaintiff had been guilty of the offences imputed, is not admissible in justification; nor can it be received even in mitigation of damages, except when offered to prove that the words were not spoken maliciously, which could not be pretended in this case. It has been said, that if one say that a particular person, *naming* him, told him a certain slander, and that person did in fact tell him so, it is a good defence to an action of slander; (7 T. R. 17; 12 Co. 132;) but these are but *dictums*, and in neither of the cases was in the point in judgment. In *Dole* v. *Lyon*, (10 Johns. R. 449,) Kent, C. J. questions the soundness of the rule above adverted to, and expresses the opinion that the liability of the defendant should depend upon the *quo animo*, the words are spoken. The same opinion is expressed in 4 Barn. & Ald. 605. Starkie also, in his Treatise on Slander, p. 218, questions the wisdom of the rule. At all events, the evidence was inadmissible under the general issue. (2 Phil. Ev. 110.

Evidence of general report was inadmissible. (*Walcott* v. *Hall*, 6 Mass. R. 514, cited with approbation in 5 Cowen, 499.) Had the defendant pleaded a justification and failed to establish it, he would not have been permitted to give evidence of circumstances tending to prove the truth of the charge in mitigation; (7 Cowen, 631;) and if so, he cannot be permitted to give such evidence under the general

issue. (14 Johns. R. 234. 2 Phil. Ev. 109. n. a. 1 Pick. R. 1.) , The rule, as laid down in 2 Campb. 286, and 1 Maule & Sel. 284, that it may be shewn that the plaintiff was generally suspected of the crime imputed to him, is questioned by Mansfield, C. J. himself, in the case in Campbell; and in this country a contrary doctrine is held. (5 Munf. 16. 6 id. 465. 1 Pick. 1. 3 id. 375.)

*By the Court*, SAVAGE, Ch. J. There is no pretence for the application for granting a new trial in this case. The defendant had openly and publicly said that the plaintiff had stolen a sheep and he could prove it by a certain boy. When he is sued for the slander, instead of producing the boy or any body else to prove the charge, he wishes to excuse himself by proving that the boy told him so. The judge properly excluded the testimony, and was perfectly justified in the remark that the defendant had endorsed the slander of Archer by making the positive charge, and asserting his ability to make proof of its truth.

Where a defendant in slander does not pretend to justify, he may mitigate damages in two ways: 1. He may shew that the plaintiff's general character is bad, not that it was bad 15 years ago, provided it has been good ever since; 2. He may shew any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge.

Proving in this case that Archer had reported what the defendant charged upon the plaintiff, would not disprove malice, for it appears the defendant had taken uncommon pains to circulate the slander. Neither would it prove the plaintiff's guilt; but if it was to have any effect, its tendency was to excite suspicion in the minds of the jury that the plaintiff was guilty.

As to proof of reports generally, there is great force in the remark of Ch. J. Parker, in *Bodwell* v. *Swan*, (3 Pick. 378;) "These very stories," says he, "may have originated in slander, and character could not be protected if the third or fourth circulator should be able to defend himself or reduce the damages because he only gave more publicity, and added the weight of his character to calumny which had been

originated by others." In *Bodwell* v. *Swan*, the evidence was offered under the plea of the general issue; it is therefore in point in this case.

There is certainly no reason why the plaintiff should be met with a justification without being informed of it by a plea or notice. Mitigating circumstances, based on a presumption or suspicion of the plaintiff's guilt, have nearly the same effect upon his character as a verdict against him; and if reports may be given in evidence, reports will ruin a man's character without any possibility of redress. If under slanderous reports a man neglects to prosecute, a presumption arises against him; if he dees prosecute, those very reports amount to what is equal to a justification. So that if reports may be given in evidence, any man's character may be blasted. (6 Mass. Rep. 514. 5 Cowen, 500. 7 Cowen, 630, 633.)

I am therefore clearly of opinion that no such reports can properly be given in evidence, unless under circumstances which shew the absence of malice and an admission of the falsity of the charge.

There are some English cases which contain a contrary doctrine. (1 M. & S. 284. 2 Campb. 251.) But Ch. J. *Mansfield*, in admitting the testimony, declared that he could not answer the arguments urgued against its admission.

New trial denied.