Regnier *v.* Cabot.

FRANCIS REGNIER, plaintiff in error, *v.* ELIZA S. CABOT *et al.*, defendants in error.

*Error to Morgan.*

In an action of slander, where a defendant does not justify, he may mitigate damages in two ways only; *first*, by showing the general bad character of the plaintiff, and *second*, by showing any circumstances which tend to disprove malice, but do not *tend* to prove the truth of the charge.

In an action of slander, the same rule in regard to evidence of general reputation obtains, as where the character of a witness is sought to be impeached. The witness must be able to state what is generally said of the person by those among whom he dwells, or with whom he is chiefly conversant; it is not sufficient for him to state what he has heard others say, for they may be few in number.

Before a witness can be impeached by proof of his having made contradictory statements, his attention must be directed, on his examination, to the statements or conversations concerning which he is alleged to have contradicted himself.

SLANDER in the Morgan Circuit Court, originally brought by the defendant in error, Cabot, in the Menard Circuit Court, where a trial was had at the November term 1843, before the Hon. Samuel H. Treat and a jury, when a verdict for $12 was rendered in her favor. At the same term the verdict was set aside, and a new trial granted on her motion, when, by agreement, the venue was changed to Morgan county.

At the March term of the former Court, 1844, the case

Regnier *v.* Cabot.

was heard before the Hon. Samuel D. Lockwood and a jury. Verdict and judgment for the plaintiff below for $1600.

The material portions of the proceedings in the Court below will appear in the Opinion of the Court.

*S. W. Robbins,* for the plaintiff in error.

The principal question arising in this case is this: Whether, under the general issue, in cases of this kind, general reputation is admissible. It is always in issue, for malice is the *gist* of the action, and the damages are consequent upon previous character. Suspicion of facts in regard to character may go to the jury, and the defendant below offered to prove suspicion of bad character. Selwyn's N. P. 248–9, note 18; Ibid, 440–1; *Larned* v. *Buffington,* 3 Mass. 546; *Wolcott* v. *Hall,* 6 do. 514; *Morris* v. *Duane,* 1 Binn. 90.

The defendant is not confined to cases where the plea of justification is interposed. Previous character for chastity may as well be shown under the general issue.

Under the pleadings, too, the defendant had a right to impeach the character of the witness, Stevens.

*T. L. Harris,* for the defendant in error.

As to the first error assigned, the true doctrine now established by all the late decisions, both in this country and in England, is, that all facts and circumstances *tending* to confirm the truth of the charge, or showing that the plaintiff was by him suspected to be guilty of the charge, is inadmissible under the general issue. *Mapes* v. *Weeks,* 4 Wend. 659; *Gilman* v. *Lowell,* 8 do. 576; *Purple* v. *Horton,* 13 do. 256; *Cooper* v. *Barber,* 24 do. 107; *Matson* v. *Buck,* 5 Cowen, 498; *Root* v. *King,* 7 do. 633; *Cole* v. *Perry,* 8 do. 214; *Shepherd* v. *Merrill,* 13 Johns. 475; *Van Ankin* v. *Westfall,* 14 do. 232; *Alderman* v. *French,* 1 Pick. 16; *Bodwell* v. *Swan,* 3 Pick. 376–7; *Kinney* v. *Hosea,* 3 Harrington, 397, and cases there cited; *McAlexander* v. *Harris,* 6 Munf. 465; 2 Starkie, 470; *Arrington* v. *Jones,* 9 Porter, 139; 2 Starkie's Law of libel, 88, 2d Ed.; *Young* v. *Bennett,* 4 Scam. 43. The whole testimony offered and rejected in this

cause tended directly to prove the truth of the charge, and therefore properly rejected.

As to the second error assigned, it is not true in point of fact. The witness said he knew nothing of plaintiff's general character, except what his brother and two sisters had said. This is not evidence of general character. 1 Greenl. Ev. 512–13.

As to the third error assigned, the answer to the first is an answer to this. They are identical as far as any thing in the record shows.

In regard to the fourth error assigned, it is sufficient to say, that the record shows that the reason for rejecting the evidence to impeach the testimony of Stevens is expressly given, that Stevens had not, either on his chief or cross examination, been asked any question or made any statement as to any conversation or statement had or made by him at any other time or place, and until this was done, such evidence is inadmissible. 1 Greenl. Ev. 514–17.

*S. T. Logan,* on the same side.

*Robbins,* in conclusion, re-argued the first point, and cited 2 Starkie's Ev. 877, and the cases there referred to; also, *Calloway* v. *Middleton,* 2 A. K. Marsh. 377; 1 Chitty's Pl. 434, and the numerous cases there cited; *Paddock* v. *Salisbury,* 2 Cowen, 811, and cases there cited, also; *Wilson* v. *Apple,* 3 Ohio, 270; *Watson* v. *Christie,* 2 Bos. & Pull. 224; *Coleman* v. *Southwick,* 9 Johns. 45.

The Opinion of the Court was delivered by

PURPLE, J. *  This was an action of *slander,* brought by Eliza S. Cabot, one of the defendants in error, before her marriage, against the plaintiff in error, and tried before the Hon. Samuel D. Lockwood, in the Morgan Circuit Court, at the March term 1844.

---

*WILSON, C. J. and Justices LOCKWOOD, YOUNG, and KOERNER, did not hear the argument in this case, and gave no opinion.

The declaration contains several counts, alleging in various forms that Regnier, the plaintiff in error, had charged Cabot, the defendant in error, with the commission of fornication. Regnier pleaded the general issue, and also a special plea of justification, to which last plea there was a demurrer, which the Court sustained, and a trial was had upon the general issue only.

Upon the trial, as appears by the bill of exceptions, Regnier, after the plaintiff below had closed her testimony, introduced Martha Cogdell as a witness, and asked her whether she did not see Cabot and Elijah Taylor, (who was one of the persons, with whom it was alleged in the declaration she had been charged by Regnier with the commission of fornication,) together in Cabot's bed-room before the speaking of the words, at a late hour in the night, she sitting in the window in her night clothes conversing with said Taylor, no other person being in the room. This evidence was objected to and excluded by the Court.

The counsel for Regnier then asked a witness, whether or not he knew the general character of Cabot for chastity, before the time of speaking the words charged. The witness answered, that all he knew about her general character was derived from conversations with his, witness's, brother and two sisters. The counsel then asked the witness what was Cabot's general character among the majority of those whom he had heard speak of her. This last question was objected to, and the objection sustained by the Court.

The counsel for Regnier also asked a witness questions in regard to Cabot's conduct in her associations with Elijah Taylor, as to where and when they had been seen together, and what their conduct had been on such occasions, with a view to prove particular acts of the said Cabot in mitigation of damages. This evidence was objected to, and the objection sustained.

The counsel for Cabot having proved by one Hiram Stevens, that he had been acquainted with her, Cabot, many years; that her character for chastity was good; that he had never heard any reports prejudicial to her character until

after this suit was brought; the counsel for Regnier asked a witness what he had heard said Stevens say in relation to her, Cabot's, character, and what he had heard said in a conversation between said Stevens and others upon that subject. The witness answered, that he had heard no conversation between said Stevens and others, nor statements of Stevens on the subject previous to the commencement of this suit. An objection was made to said witness' answering any further to this question, and sustained by the Court.

The same counsel asked this witness to state what he had heard said Stevens say, and what he had heard said in a conversation between said Stevens and others since the suit was commenced, about a conversation in relation to the general character and conduct of Cabot, which was had before the speaking of the words. This evidence was objected to upon the ground that, in his examination, the attention of the witness had not been directed to any such conversations, or statements.

To each of the foregoing decisions, Regnier, by his counsel, excepted. The errors assigned are,

1. That the Court erred in not permitting the witness, Cogdell, to state such facts and circumstances in mitigation of damages, as show a ground of suspicion, but not amounting to actual proof of the charge.

2. In not permitting Regnier to prove the general character of Cabot for chastity before the speaking of the words charged.

3. In refusing to let Regnier show the conduct of Cabot in her associations with Elijah Taylor, in mitigation of damages.

4. In not permitting Regnier to prove the statements of the witness, Stevens, at different times, to be inconsistent and contradictory.

Whether a party, under the general issue, in an action of slander, can be permitted to show, in mitigation of damages, specific facts which would tend to cast suspicion of guilt upon the plaintiff, is a question upon which heretofore there has been some conflict of authorities. The current, however,

of the more recent decisions is strongly against the doc-trine, and in some of the very few cases where it has been held that the defendant had this right, the Judges themselves, who admitted the correctness of the principle, acknowledged that it was unsupported by sound reason, or good sense.

A defendant in an action of slander, by the plea of "not guilty," only declares that he did not speak the words charged in the plaintiff's declaration to have been spoken by him. He dares not affirmatively allege that they are true. Indeed, by this plea, he admits them to be false and only professes to defend himself, upon the ground that he has not defamed the plaintiff's character in the manner charged against him in the declaration; and yet, against what would seem to me all rules of propriety, against his own tacit admission upon the record, he seeks in an indirect manner, by proof of particu-lar facts and circumstances, to convince the jury that they are true, and that the plaintiff is entitled to none, or but nom-inal damages. Professedly, he does not attempt a justifica-tion of the slanderous words, yet offers to introduce the same kind of evidence as would tend to establish such justifica-tion. He says, virtually, to the plaintiff, "I never pretended that you were guilty of the crimes imputed to you, but still I will satisfy the jury that you are." In the very case under consideration, Regnier admits by his plea, that Cabot has not been guilty of fornication, but proposes to prove to the jury that she was in her bed room, in her night clothes, at a late hour of the night, alone with Taylor, and thereby induce them to infer the existence of that improper intimacy, which he does not openly avow. A party to a suit involving ques-tions of character, is supposed at all times to be prepared to meet and repel attacks of a general nature; but he cannot be presumed to be always in readiness to account for, or ex-plain the particular and specific transactions of his whole life.

By analogy to this general principle, the rule of law as applicable to this question seems, by the weight of authority, now to be, that where a defendant does not justify, he may mitigate damages in two ways only; *first*, by showing the gen-eral bad character of the plaintiff, and *second*, by showing

any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge. This doctrine is sustained by the more numerous and respectable authorities, and, in my judgment, is the most rational and consistent rule.

In the case of *Mapes* v. *Weeks*, 4 Wend. 659, the defendant offered, under the general issue, to prove that one Archer had told him what he had charged the defendant with, and that from general report in the town of Monroe, the plaintiff's residence, it was suspected that the plaintiff had stolen sheep and hens; that it was common report in that town; and the evidence was excluded, and the rule in relation to evidence in mitigation of damages was laid down as herein before stated.

The principle has been adhered to in various subsequent and prior decisions in the State of New York, in Massachusetts, New Jersey, and several other States, and I deem it only necessary here to refer to these authorities, as, in almost every instance, not only their import, but the language of the Courts pronouncing the decisions is substantially the same. The cases referred to are as follow. *Alderman* v. *French*, 1 Pick. 16; *Bodwell* v. *Swan*, 3 do. 378; *Gilman* v. *Lowell*, 8 Wend. 573; *Purple* v. *Horton*, 13 do. 9; *Cooper* v. *Barber*, 24 do. 105; *Matson* v. *Buck*, 5 Cowen, 499; *Root* v. *King*, 7 do. 630; *Arrington* v. *Jones*, 9 Porter, 139; *Kinney* v. *Hosea*, 3 Harrington's (N. J.) R. 397.

Many of the Judges who pronounced these decisions, are men of great learning and good sense, and the reasons by them advanced in support of their opinions are so satisfactory and conclusive in their character, that to me it is matter of surprize that a contrary doctrine should, at any time, or in any country, heretofore even have partially prevailed.

The second error assigned by the plaintiff has no foundation in the record. The Court did not prohibit the defendant below from proving the general bad character for chastity of the plaintiff below. The witness, whose testimony in relation to that matter was rejected, himself testified that he knew nothing of her general character, except what he had heard from his brother and two sisters; and after having testi-

fied to this fact, which shows that he had not the requisite knowledge and information to enable him to form any correct judgment or opinion of her general character, he is asked to state what a majority of these three persons, whom alone he has heard speak upon the subject, have said in relation to her general character. In my judgment, character is too valuable to permit it, in a Court of justice to be destroyed, or even sullied by a report derived from a majority of three persons only. It is general, and not partial, reputation in the neighborhood where the party resides which, in legal contemplation, establishes character for good or evil. The same rule of law obtains here, as where a witness' character is sought to be impeached. " It is not enough," says Mr. Greenleaf in his Treatise on Evidence, p. 513, "that the impeaching witness professes merely to state what he has heard others say, for those others may be but few. He must be able to state what is *generally* said of the person by those among whom he dwells, or with whom he is chiefly conversant, for it is only this that constitutes his general reputation or character." No doubt can be entertained but that the Court decided correctly in rejecting this evidence.

The third assignment of error is of the same character as the first, and is, therefore, already decided.

The Court below also properly rejected the evidence offered, that the witness, Stevens, had made contradictory statements to those made by him in his testimony upon the trial. This evidence could only have been offered with a view of impeaching the witness; in any other point of view, it would have been improper, and could not have been received; and before it could, even for this purpose, become pertinent, the attention of the witness himself upon his examination should have been directed to the statements or conversations, concerning which the party proposed showing that he had made such inconsistent and contradictory statements.

Upon the whole, the Court is of opinion that there is no error in the record, and that the judgment of the Circuit Court should be affirmed with costs.

*Judgment affirmed.*