# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

# STATE OF MAINE.

---

## LLEWELLYN POWERS *vs.* THEODORE CARY.

*Amendment. Evidence. Libel. Practice.*

In an action for a libellous publication concerning the plaintiff in his private character, the judge may even after the testimony has been taken, allow an amendment of the declaration, by the addition of an allegation that the libel was published of and concerning the plaintiff in an official capacity.

When in a suit for a libel the first count is for damage to the plaintiff's private character, and there are other counts for injuries to his official and professional character, the permission to insert in such first count these words, "of and concerning the plaintiff in his capacity as an attorney and counsellor at law or as a collector of customs," is immaterial, the court instructing the jury that upon such first count he could recover only for injuries inflicted upon his private character, and that on the second count the jury could give damages for any injury to his character as a professional man.

When the libellous matter is contained in a newspaper article, the plaintiff need not read the whole article in evidence, but the defendant may do so.

The presumption of malice arising from the publication of a charge which, if false, is libellous, is not rebutted by proof that the publisher had reason to suspect the truth of the charges made.

The question of malice upon the part of the writer (who was not the publisher) of a libellous article is immaterial.

Whether or not the plaintiff is the person intended in the article alleged to be
libellous, and whether one or more fraudulent acts are charged therein, are
questions of fact for the jury.

Testimony bearing upon the general character of the plaintiff is admissible
upon the question of damages only.

A witness cannot be allowed, upon direct examination, for the purpose of
strengthening her testimony to state that she has made the same statement
of the facts testified to by her at other times—immediately after they were
said to have occurred—to various persons.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL.

ACTION ON THE CASE for two libellous articles published by the
defendant concerning the plaintiff. The report of the evidence
and the exceptions make a book of 248 pages. The declaration
set forth that, at the time of these publications, the plaintiff, a
citizen of Houlton, had been for many years a practicing attorney,
relying for a livelihood upon his profession; holding also public
office, and in good repute as a moral citizen; that the defendant,
proprietor, publisher and editor of a paper called the Aroostook
Times, printed weekly at Houlton, did on the twelfth and thir-
teenth of March, 1873, print in said paper the libellous article then
set out (in the first count) consisting of an affidavit made on said
twelfth day of March, by one Annie G. Cornelison, a colored ser-
vant in the family of G. B. Page, Esq., of Houlton, and of com-
ments thereon; which, the plaintiff alleged, were "designed to
cause the public to believe that he was of lewd and lascivious
character," and that being a married man he had attempted to
seduce the negress and commit adultery with her, &c., &c.

The second count set out that the plaintiff "for many years had
been a resident of Houlton and a practicing attorney and coun-
sellor at law in the courts of the United States and of the State
of Maine, and for four years had been collector of customs at
Houlton," and held these positions on the thirteenth day of Jan-
uary, 1873, relying upon them for support, when the defendant,
desiring to deprive the plaintiff of his collectorship and to injure
him in his practice, &c., &c., "did then and there publish of and
concerning the plaintiff in his said capacity of collector of cus-
toms and in his said capacity as attorney and counsellor at law, in

the Aroostook Times, &c., the following false, scandalous and malicious paragraph and statement;" which is then recited, so far as it is made subject of complaint, the substance of it being (as the innuendoes averred) that, in his determination to attain wealth, the plaintiff had cheated clients and those for whom he had obtained pensions and bounties; had reported to their creditors honest business men of good standing as verging on insolvency, so as to get fees out of collections; and had some one sign as informer in order to cheat the government out of a quarter of the value of seizures, &c.

The defendant pleaded not guilty, and justified by setting up the truth of the statements. In answer to the second count he specified sixteen transactions which he proposed to prove, as sustaining the charges in the article of January 30th, 1873.

The plaintiff read so much of this article as supported his declaration, and the defendant claimed that the whole should then be read but the presiding judge ruled that the plaintiff need only read so much as he complained of, and that the defendant, if he chose, could put in the rest with his testimony.

This editorial was written by a brother of the defendant, Dr. George Cary, who was called as a witness by the defence and inquired of as to his motive in writing it, and whether or not he had any feelings of malice toward Mr. Powers; to this the plaintiff objected and it was excluded.

Miss Cornelison was a witness for the defence and was asked if she narrated the occurrences as set forth in her affidavit to Mrs. Page and others immediately after they happened; and Mrs. Page was asked if Annie told her of them, and how she (Annie) then appeared; whether angry and excited or otherwise. These questions were excluded upon the plaintiff's objection.

Against the plaintiff's objection, the defendant testifying in his own behalf was permitted to state that he had no ill-will or malice toward Mr. Powers, when the articles were published, and that he believed them to be true. His counsel argued that this rebutted the idea of malice.

The defendant claimed that the plaintiff's name did not appear in so much of the article of January 30, 1873, as was read to the

jury, and that no evidence had been introduced to prove him the person intended; and therefore that there could be no recovery upon the second count. The presiding judge left it to the jury to find from the evidence whether or not Mr. Powers was the person intended.

A large number of witnesses were called upon both sides to prove Mr. Powers' reputation for truth and chastity. The jury were told to consider this only in case they came to the question of damages.

It was contended by the plaintiff that the allegation that "clients were cheated in ways so deft," &c., (as stated in the article of January 30 upon which the second count was based) could only be justified by proof of several acts of fraud; while the defendant claimed that a single act proved would be a justification for the publication of that charge. The judge told the jury the language was susceptible of meaning several acts—a course of dealings—but left it to them to determine what it meant.

To the several rulings, adverse to his views above mentioned, and to other rulings indicated in the opinion, the defendant excepted, the plaintiff having obtained a verdict for $5,508, which the defendant moved to have set aside as against evidence and because the damages were excessive.

The court inquired if counsel had any requests to make for instructions, and the defendant presented eleven which he desired to have given to the jury. The first was: "That, inasmuch as the libel set out in the first count is not alleged to have been published of and concerning the plaintiff in his capacity as attorney and counsellor at law, or as collector of customs, or as a married man, but only of and concerning him individually, he can recover damages only in that one capacity." To this the judge replied that, as the trial and testimony had proceeded as if the writ were in due form, he should allow an amendment by inserting the words "of and concerning the plaintiff in his capacity as an attorney and counsellor at law, or as a collector of customs."

*Joseph Baker* for the defendant.

*A. G. Jewett, C. M. Herrin* and *L. Powers* for the plaintiff.

APPLETON, C. J. This is an action for a libel in which the plaintiff obtained a verdict. The case comes - before the court upon exceptions to the ruling of the justice presiding, and upon a motion for a new trial.

Numerous exceptions have been alleged which we propose to examine and discuss.

I. The first count relates to the plaintiff as an individual. The libellous article upon which it is based does not refer to him as an attorney or as a collector of customs. There is no imputation of professional or official misconduct. With the insertion of the proposed amendment to which exception was taken, the count still refers to a libel imputing personal, and not professional or official misbehavior. To maintain an action on the ground that the libel was injurious to the plaintiff in his professional or official character, it must relate to such character and must impute misconduct therein. If the publication is libellous in itself an averment of the plaintiff's professional or official character is not a ground of demurrer, though the libel cannot apply to such character. *Gage* v. *Robinson*, 12 Ohio, 250. With the amendment, the plaintiff could recover for damages only so far as the libel refers to him as an individual. Even though he had not been an attorney or collector of customs, he could have recovered for the individual damages though describing him as such when it was not the fact. *Lewis* v. *Walton*, 3 B. & C., 138.

In relation to the first count, in which the amendment was made, the counsel for the defendant requested the court to instruct the jury "that inasmuch as the libel set out in the first count, is not alleged to have been published of and concerning the plaintiff in his capacity as attorney and counseller at law, or as collector of customs, or as a married man, but only of and concerning him individually, he can recover damages only in that one capacity."

The presiding judge had already instructed the jury "to take into consideration and give damages for the injury necessarily inflicted upon the character of the plaintiff, if any, under the count which is set forth on the affidavit, which pertains to private character, for any injury inflicted upon his private character."

That there may be no mistake in this respect, when referring to the second count, he instructs them that they may give damage under that "for any injury to his character as a professional man." The instructions as to the first count, after the amendment, remained without change or modification. They were to give damages "for any injury inflicted upon his (plaintiff's) private character." It was not necessary that they should be repeated. This instruction would have done no good. Nor indeed was it requested. The instructions as given were the guide and rule for the jury in relation to the first count and they were left unchanged.

As no instructions had been given authorizing the jury to give damages on account of the plaintiff's relations as a married man, there was no need of negativing his right to recover because of such relations. The grounds upon which damages could be given were expressly stated, and this statement excluded what was not so stated. The remark however of the justice presiding, impliedly affirmed, if affirmance was required, the proposition of the counsel for the defence.

The amendment could have done no injury, as the basis of damages was not thereby enlarged. As the jury were not authorized to increase the damages in consequence of the amendment, we cannot presume they did so.

In *Barnes* v. *Trundy*, 31 Maine, 321, it was held that no action could be maintained for words spoken of a person with reference to his occupation, unless the declaration contained a distinct averment that they were spoken of and concerning him and of and concerning his occupation. But the first count contains no averment whatever, concerning the occupation of the plaintiff, nor were the jury in any way authorized to consider his occupation in assessing damages for the libel set forth in the first count, but were specially directed not to do so.

II. The plaintiff to make out his case read the libellous matter on account of which he claimed to recover. The defendant claimed that he should read the whole article. The court did not

require him so to do, but said the defendant might put in the whole libel which he did.

The plaintiff put in what constituted the grievance of which he complained. His case was then made out. There was nothing more for him to do if the words were libellous. The defendant read the rest of the article which contained the libellous matter. The whole was before the jury. If the rest of the article mitigated, modified or destroyed the injurious effects of what the plaintiff had read, the defendant had the full benefit of this.

The counsel for the defendant in support of his exception to the judge's not requiring the plaintiff to read the whole article has referred to 2 Greenl. on Evid., § 423, where it is said : "if the libel is contained in a letter or a newspaper, the whole writing or paper is admissible in evidence." But the whole paper was received and read in evidence. The citation is far from supporting the doctrine contended for that the court as matter of law was required to compel the plaintiff to read more than was necessary to make out his case. The case of *Cooke* v. *Hughes*, R. & M., 112, is cited by Greenleaf in support of the text. Upon recurring to that case, it will be found that the ruling of the justice presiding was precisely in accordance with the law laid down. The plaintiff had read all that he deemed necessary. The defendant's counsel claimed that he had a right to have the whole article read, but this was strenuously resisted by the counsel for the plaintiff. Abbott, C. J., says: "I do not recollect an instance of an action in which the defendant has been prevented from reading the whole of the publication complained of. . . . I have always understood the defendant has a right to have the whole publication read." It was so read.

III. The plaintiff had called one Clark to prove publication by the defendant. In his direct examination he had inquired as to what the defendant said when the libel was handed him.

The defendant being called, the question was put by his counsel, as to what was said on that occasion about the publication. To this inquiry the plaintiff's counsel objected, but upon the sugges-

tion of the defendant's counsel that it related to the conversation with Clark, the court permitted it to be answered, remarking at the same time that it was only admissible to contradict him.

The objection of the plaintiff's counsel to the question was over-ruled at the instance of the defendant's counsel. It nowhere appears that the counsel for the defendant desired it to be admitted generally or objected to the limitation imposed upon the evidence by the court. The questions proposed by him had been answered notwithstanding the objections interposed, and if he desired any qualification of the limited admission, which he deemed important, he should have so requested.

IV. The defendant was asked by his counsel if he had any ill will or malice toward the plaintiff, to which he replied that he had not.

He was then asked if he had heard similar reports in relation to the plaintiff to those contained in the affidavit of Annie G. Cornelison, and whether that fact was an additional inducement to publish the article in question.

Both these inquiries were excluded and properly excluded. The first involved the admission of hearsay evidence, and was in-admissible. The second assumed the first as answered, and is based upon the assumption of the answer given ; but as the first inquiry was not permissible upon legal principles the second must abide the same result.

The object of the inquiry was to rebut malice, but the presump-tion of malice arising from the publication of a charge, which if false is libellous, is not rebutted by proof that the publisher had reason to suspect and believe the truth of the charges made. *Usher* v. *Severance*, 20 Maine, 9. A publication in a newspaper, if false, is actionable, though the editor believed it to be true and acted in good faith ; and the law will imply malice from the pub-lication. *Smart* v. *Blanchard*, 42 N. H., 137. In *Jellison* v. *Goodwin*, 43 Maine, 287, it was held that legal malice was not inconsistent necessarily with an honest purpose.

The words being libellous and not privileged and malice being an inference of law, the evidence was not admissible to disprove

malice in law, and malice in fact had been fully and absolutely negatived and disproved so far as that could be done by the testimony of the defendant.

Indeed, evidence of general reports that the defendant is guilty of the imputed offence is inadmissible, as well in mitigation as in justification. *Mapes* v. *Weeks,* 4 Wend., 659.

V. The libellous article was written by George Cary, a brother of the defendant. He was a witness in the case, and this question was proposed to him : "State whether you had any information upon which you relied to base the several charges." The answer to this question was excluded, except so far as the witness had personal knowledge of facts to which he could testify.

This question pre-supposes hearsay, and the inferences drawn by the witness from such hearsay and is obviously inadmissible. Whether there was or was not malice on the part of the witness is immaterial. The defendant was in no way responsible for the acts of his brother, or for his state of mind. He was only liable for his own acts.

VI. The first count is based upon the publication of an affidavit made by Annie G. Cornelison, whose deposition was read in the defence.

After testifying to the truth of the affidavit, this question upon the direct examination was proposed : "Please state whether you complained to Mrs. Page and others about what Powers said and did to you, and if so, to whom did you complain, and how soon after you had seen him at various times ?"

Answer. "I did so complain to Mrs. Page and to Miss Esther Sutherland, and Katie Carpenter and Jennie Donnel were also present, immediately after I came into the house on the Saturday night. At other times I spoke of them soon after."

This question and answer was excluded, and rightly so. "We think it is very clear," observes Hubbard, J., in *Deshon* v. *Merchants' Insurance Company,* 11 Metc., 199, " that a witness cannot be allowed to state, on the direct examination, that he communicated to third persons, at prior times, the same or other particular facts, with a view of strengthening his testimony."

It is true that at a subsequent stage of the trial, this question and answer was received. It had been excluded, notwithstanding the defendant's objection. Its subsequent reception was at his instance, or in accordance with his views. But that could not enlarge his rights. It only removed one ground of exception which otherwise he might have had.

In this stage of the case, the defendant offered to show by Mrs. Page that on the Saturday evening in question Annie made a complaint to her and others of having been insulted, and that she appeared excited and angry, which was excluded.

This evidence was properly excluded. The affidavit and the answers in the deposition of the witness were under oath—under the highest sanction for truth known to the law. It is no corroboration to prove that when free from those sanctions she had made similar statements. It is an attempt to corroborate higher and more reliable testimony by an inferior description of proof— by what is mere hearsay. The case of *Com. v. Wilson*, 1 Gray, 337, applies only to a case where an attempt was made to impeach a witness on cross-examination and is entirely inapplicable to the case at bar.

Proof that the witness was excited or angry when she made certain statements was excluded. The statements being excluded, the appearance of the witness became obviously immaterial, for the cause of her excitement and anger was unknown. Besides, the appearance and manner of a witness—that she is excited and angry—when certain statements are made, are not evidentiary of the truth of such statements, unless excitement and anger are to be deemed as circumstances corroborative of what is said in those frames of mind.

VII. The plaintiff introduced the declarations of Annie G. Cornelison, contradicting what was stated in her affidavit, and that she did not know what was contained therein.

The defendant offered to prove her declarations at the time in accordance with her affidavit, and that the affidavit was read to her and assented to by her as true. This evidence was excluded.

It is well settled that a witness who is impeached cannot be corroborated by proof that at other times he has made statements in accordance with his present testimony. The discredit arising from contradictory statements still remains. *Com.* v. *Jenkins,* 10 Gray, 485.

VIII. The defendant desired the court to instruct the jury "that inasmuch as the plaintiff is not named, or in any way designated in the libel set out in the second count, nor in any part of the article read to the jury from which said count is extracted, and no evidence whatever has been introduced to show that he was meant by the article, the plaintiff cannot recover under this count." The court declined so to instruct them, but submitted it as a matter of fact for the determination of the jury, whether the plaintiff was "the person intended, alluded to and described in the article" of the 30th of January, directing them to settle that question from the facts and circumstances submitted in the evidence before them.

The requested instruction was properly refused, because it withdrew the consideration of the evidence from the jury and required the court to assume a fact which it was for them to determine.

The publication of the articles was not denied. That the affidavit referred to the plaintiff was not questioned. Indeed, it alludes to him by name. The declaration contains special averments connecting the publication with the plaintiff and showing that it referred to him. The justification and the specifications of facts upon which that justification rests refer to the plaintiff. Indeed, the whole course of the testimony unmistakably shows such to be the fact. Whether the plaintiff was the person intended in the libel was to be determined by the jury. *Van Vechten* v. *Hopkins,* 5 Johns., 211. It was submitted to their decision as it should have been.

IX. The judge instructed the jury that "upon the question whether the alleged libels are true or false, there was not to be taken into consideration on the one side or the other any testi-

mony put into the case bearing upon the general character of the plaintiff. That evidence is to have a bearing only upon the question of the amount of damages recoverable, if any are."

These instructions are strictly in accordance with the law as laid down in *Stone v. Varney*, 7 Metc., 93, where a justification is pleaded. "This evidence," remarks Dewey, J., "is to be applied solely to the question of damages; and it would be the duty of the court to advise the jury that it could not be used to sustain the justification, but was properly introduced because both questions were before them, and if the justification failed upon the evidence applicable thereto, they would consider the evidence of the character of the plaintiff, in assessing damages for the injury occasioned by the defamatory words; but for other purposes, the evidence would be irrelevant."

X. The article charged as libellous contained this sentence: "Riches to him simply consist in getting the money of others, and not the rendering of an equivalent for services performed. So the shortest way was the best. Clients have been cheated in ways so deft and adroit as to elicit from distinguished brother lawyers while commenting upon them the praiseworthy title of piracy."

The question was raised whether the proof of any one of the twelve specifications under this charge would be sufficient to establish a complete justification of its truth.

As to this the court instructed the jury "as matter of law, that the language of that charge is capable of the meaning that more than one instance of cheating was intended by it; and that they were authorized to find from the evidence, whether such was the fact or not; that if they found that it was intended by the defendant to charge more than one instance of committing fraud, then not less than two instances should be proved to make out a justification under such charge, and that proof of two instances would be sufficient justification; that if only one act of fraud was charged, only one need be proved, to make out the justification; that if more than one fraudulent transaction was charged against the plaintiff in this libellous article, and one only was proved, while such proof would

not amount to a complete justification of the charge, it would go in extenuation of the liability of the defendant for this libellous matter, and in mitigation of damages therefor."

. If the meaning of the language referred to in the charge is to be determined by the court, we think that upon a fair construction it refers to more than one instance of professional delinquency, and therefore that to make a complete justification the defendant was bound to establish two of his specified cases of professional misconduct. The charge in this view of the law is therefore favorable to the defendant, inasmuch as they were authorized, if they thought such the meaning of the words, to acquit the defendant so far as relates to this charge, if only one instance was proved. In other words, they might acquit with one instance only proved, when upon the true construction two would be necessary for a complete justification. The charge if erroneous was so to the injury of the plaintiff.

But the charge as given was in strict accordance with the authorities. The meaning of the defendant is a matter for the jury. It is equally so, whether the words are ambiguous or not. If ambiguous, the ambiguity was submitted to the jury, who were to determine what was the meaning of the words used. In *Street* v. *Bragg*, 10 A. & E., 59 E. C. L., 906, the objection here taken was interposed. "A question has been raised," remarks Wilde, C. J., in delivering his opinion "whether it was competent for the jury to find the truth of the innuendo; and it is said that the matter should not have been left to the jury. Undoubtedly it is the duty of the judge to say whether a publication is capable of the meaning ascribed to it by an innuendo; but when the judge is satisfied of that, it must be left to the jury whether the publication has the meaning so ascribed to it. I think the letter was capable of the meaning ascribed to it." So in the case before us. The words were capable of the meaning ascribed to them by the plaintiff. Whether the meaning so ascribed was the true meaning, and if not, what was the meaning, was precisely what was submitted to the jury.

Powers v. Cary.

XI. The instruction in relation to seizures by the plaintiff was entirely favorable to the defendant. The court instructed the jury that the article charged an impossible offence; that if the plaintiff through mistake of the law attempted an impossible fraud, proof of such attempt would be a justification; and that if there was no justification made out the damages would be only such as would arise from a charge of an offence, which on its face could not possibly have been committed. The instructions on this point could not have harmed the defendant.

An examination of the exceptions satisfies us that the defendant has no just ground of complaint on account of the rulings of the justice presiding at the trial.

The defendant moves to set aside the verdict on the ground of excessive damages. The charges made were grave, affecting the personal, professional and official character of the plaintiff. They concerned him socially, politically and in all the relations of life. The defendant justified the charges made in some sixteen specifications of misconduct and failed in his justification. A justification does not disprove malice, but rather confirms it. The defendant is a gentleman of respectability and wealth. The charges were sent broadcast over the community. Coming from such a source, it could hardly be otherwise than that they should injure the reputation and wound the feelings of the one against whom they were made. There were numerous witnesses whom the jury saw and heard. The trial occupied much time. The case was elaborately and ably argued. The charge was clear, correct, impartial and sufficiently favorable to the defendant. The verdict is large. The charges were of conduct, which if true were utterly destructive of character. The question of damages is one which the law submits to the jury. No imputation is made upon their integrity of action. Parties litigant must bow to their decision as to that of the ultimate tribunal for the determination of facts. *Exceptions and motion overruled.*

CUTTING, WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.