Van Wyck, J.
The plaintiff brought this action against the defendant, a daily newspaper published in this city, to recover damages for an alleged libelous article published on October 4, 1885. The jury rendered a verdict in favor of plaintiff for $2,500, on which judgment was entered, and on a motion for new trial an order was granted denying the same. From the judgment and order defendant appealed to this court.
The article complained of is literally set forth in the complaint and is substantially as follows:
Another in her place is what Mrs. Ropke found, after a visit to New York city, on account of which she wanted to commit suicide. Her husband (the plaintiff), is forty years old, medium height, a married man with one living child, and has a grocery store on Third avenue, residing with his family m the rooms over the store, and is generally bedaubed with the marks of his trade. From his appearance' no one would accuse him of being a lady killer. Recently in the afternoon, Mrs. Ropke started to visit some friends in New York, intending to stay all night. As soon as she started, a young woman (woman I referred to in the testimony) was seen to enter the store, who was not observed to leave it again, and at the regular time he closed the store. Mrs. Ropke returned the same night at midnight and proceeded to the private entrance to Ropke’s house, and was soon engulfed in darkness and in a few minutes darted out of the house screaming and ran across Third avenue down toward the water, followed by her husband, who caught and held her. While they were struggling, a police officer came up and asked what was the matter, to which the wife responded- “He thinks he packed me off to New York for the night, but I smelt a mouse and came back-just now, and what do you think I found for a crazy notion, why there was a young woman fast asleep in me place, and he was fast asleep, too, the beast.” Then thy *711 wife ran back to the house and darted to the bed room, but the bird had flown.”
From the admitted facts, it appears that Mrs. Ropke went to New York that afternoon and returned late that night and entered the house, where she found her husband and the woman T, who had been at the house that day and stayed all night. That Mrs. Ropke had some words of complaint at least with her husband, and left the house and went down towards the water of the bay, and was followed by her husband who carried her back. There is testimony tending to show that plaintiff Ropke had improper relations with woman (T), and testimony of Kenny, tending to show while down by the water the husband had hold of his wife urging her to go home, when the wife refused, saying, that she did not want to live with such a man, and saying something about a woman, but what, he did not know. But there is no testimony tending to establish the interview by the water that night between her and a policeman, or any other person, in which she stated she found her husband and the woman in bed together. But there is testimony tending to show that the wife next morning told Mrs. Raufield that when she returned home the night before she listened at the door and heard the woman (T) say she was afraid Mrs. Ropke would come home and catch them. He said, she will not be back till later, at which juncture she opened the door and found the two on the bed together. The improper relations between the plaintiff and woman (T), and the wife’s alleged statement in Kenny’s presence.
The defense of justification was pleaded, viz., the truth of the defamatory article complained of.
This brings us to the consideration of wnat will maxe out the defense of justification on the ground of truth of á defamatory article purporting, in part at least, to be the statements of another person of the plaintiff’s deeds and acts. If defendant has correctly reported the defamatory, language of a third person in reference to plaintiff, then in a certain sense he has spoken or printed the truth; but is this sufficient to establish the plea of justification, or is he called upon to prove the truth of the charge against the plaintiff’s character contained in the statement of such third person, which the defendant has repeated, though he truthfully reports the statement? The history of the law on this point will be found far from uninteresting. It marks the gradual growth of a higher and higher grade for the value of character of the individual, and" developed along in a parallel line with the right of free speech and a free press, which means freedom to utter the truth without fear or danger; but this right imposed the correlative duty of not transcending this healthful limit at the peril of being *712 held Hable for it in damages civilly or with punishment criminally. The supposed privilege, which from the argument of appellant’s counsel he seems to think still exists, of repeating defamatory matter without liabihty, so long as it has been correctly repeated, is supposed to have been founded on a judicial obiter dictum in the Case of Earl of Northampton, for slander as long ago as 1613 (12 English Rep., 133), in which case the court intimated such was the rule as to all persons except magnates like the Earl of Northampton.
In 1805 this rule was approved, with the qualification that to render such repetition a justification for slander, the name of the previous utterer must be mentioned at the time of the repetition, and that the disclosure of the name in the plea for the first time was not sufficient. Woolnoth v. Meadows, 5 East., 463.
In the state of Maine this rule in actions for slander was approved, unless it was proven that the repetition was malicious. Haynes v. Leland, 29 Me., 233. And, also, in-some of the western states, and in other of the states it was held that giving the name of an author at the time of repeating a slander was evidence of want of malice. Though in New York in action for slander, evidence that the defendant had been told by a third person that,.the plaintiff was guilty of the crime imputed to him was inadmissible. Mapes v. Weeks, 4 Wend., 659.
The foregoing authorities were all in actions of slander. The rule that repetition with name of the author mentioned at the same time, was a justification, seems never to have prevailed in the action of fibel, even in those jurisdictions where it did prevail in the action for slander. The (direction we suppose, was based on the theory that it was (natural that all human beings should repeat to their friends [what they had heard about their neighbors, which is a 'common practice even in these days of religious progress 'and enlightened civilization, but that persons of ordinary prudence should and would ascertain the truth of such defamatory statements about their fellowman, before they coldly and thoughtfully put in writing or in print for others to pursue.
The first time this point was ever raised in an action of libel was in 1803, in Pennsylvania, and it was held that the giving of the name of the author was no excuse for publication of libel. Runkle v. Meyer, 3 Yeates, 518.
The same rule was enunciated in New York in 1813. Dole v. Lyon (10 Johns., 447), and, also, in Tennessee (Larkins v. Tarter, 3 Sneed., 681).
The English courts early discountenanced the idea that the fact, that defamatory language was a repetition, should *713 be deemed a justification in an action of libel. Miles v. Spencer (1 Holt N. P., 533), and Lewis v. Walter, 4 B. & Ald., 605, A. D., 1821.
In Hew York the dictum in the Earl of Northampton Case seems to have been altogether repudiated. Mapes v. Weeks, 4 Wend., 659; Inman v. Foster, 8 id., 602; Hotchkiss v. Oliphant, 2 Hill, 510; Dole v. Lyon, 10 John., 447, opinion by Kent, J.; Sandford v. Bennett, 24 N. Y., 20.
The truth, which is admitted as justification, is the truth of the defamatory, in substance and in fact, and in the sense in which it was used and intended to be used.
If A repeats that B said C committed adultery, it is not a justification to prove that B did say so, but to justify such repetition, the defendant must prove that C did commit adultery as charged by B. Watkin v. Hall, Law Rep., 3 Q. B., 396, and authorities above cited.
A close and critical consideration of the alleged libelous article published by defendant and set forth in the complaint herein, contains but one defamatory charge, viz.: “That on the night in question the plaintiff had improper relations with the woman (T) in his wife’s bedroom, and that this information was derived from his wife in part.
In our opinion justification or truth of defamatory publication would be established, if by a fair preponderance of evidence, the jury was satisfied that the plaintiff had improper relations with the woman (T) on that night in his wife’s bedroom, this is the substance of the defamatory article and it was never contemplated that every word of. the article should be justified.
The learned judge, before whom this case was tried, in his charge to the jury, said: “There are two distinct charges; one that the wife charged the husband with the commission of adultery or taking improper liberties with a woman on the bay side of the avenue; secondly, that that (the adultery or improper liberties) took place. ” Again, ‘ ‘ the publication of the truth is always an answer in an action for libel, so I say the important question for you to determine is whether both these charges were true. If they were true, your verdict will be for the defendant. If they were not true, unless both are true, you will find a verdict for the plaintiff.” Again: “Did the interview substantially take place on the bay side of the avenue, * * * as narrated in the article % Is it a fact that Mrs. Ropke coming back from Hew York discovered what was charged in the article; did she find Ropke taking improper liberties with a woman ? If you find both of these facts in favor of the defendant, your verdict will be for defendant. If you find either of those charges are not true, you will find for the *714 plaintiff.” Again: “You must be satisfied that Ropke took improper liberties with a woman in the house where he lived. * * “You must be also satisfied that the interview took place on the bay side, substantially as represented in the article. Has he (defendant) satisfied you of the truth of the charge that Mr. Ropke * * found her husband taking improper liberties with a woman in the house, and did this interview take place * * on the bay side of the avenue ?” If you find the defendant * * has not made out the truth, of either charge, you will find a verdict for the plaintiff.”
We have quoted thus fully from the charge to show that the court strongly and plainly impressed upon the jury that there was no justification of the article, even though they were satisfied that Mrs. Ropke on the night in question caught her husband committing adultery or taking improper liberties with the woman (T.) in her own bedroom, unless in addition they were also satisfied that the published interview on the bay side of the avenue, just after-wards, substantially took place with the officer or Kenny, in which she is reported to have said she caught her husband and this woman asleep in her bed. No such interview with the officer took place, and none with Kenny, for all he says that he heard the wife say was, that she refused to go back to the house, saying she did not want to live with such a man, and some word was mentioned about a woman, but what it was he could not say.
So, on the theory upon which this cause was submitted to the jury, the court virtually directed a verdict, for there is not a particle of evidence that the published interview took place that night on the bay side of the avenue. We cannot assent to the proposition of law that when an article is published charging plaintiff with improper liberties and acts with a strange woman on a certain night in his wife’s bedroom, and that his wife on the same night stated the fact to another; that the truth of the plaintiff’s improper acts with the woman, as published, is not justification, if defendant fails to show that plaintiff’s wife so reported it to another on the night and at the place mentioned in the article, even though it be proved that the wife so stated it to another person the next morning. This case, in our opinion, in tins respect, was submitted to the jury on an erroneous theory of the law which militated very heavily against the defendant.
Plaintiffs counsel, doubtless having in mind, that the court had already charged the plaintiff, was entitled to a verdict unless the defendant established two propositions, viz.: First, That plaintiff took impropér liberties with the woman on that night in his own house; .and, second, *715 that his wife, on the same night, at the bay side, made against him to an officer, accusation to the effect that she caught them in bed together. He (plaintiff’s counsel), for the purpose of securing beyond all question a verdict in his favor, requested the court to further instruct the jury. That the charge in the article that plaintiff’s wife accused him, as alleged in the presence of the officer, would not be justified by proof that she made such charge to another person at another time. Referring unquestionably to the wife’s alleged statement to Mrs. Caulfield the next morning in the house, that she caught them in bed together the night before when she returned home, the court in response to this request said: “I shall instruct you, if you find she made the statement at the bay side, at or about that time, that would be a justification. Thus in the light of the evidence giving the jury to understand that if the wife did accuse her husband that night at the bay side, to either the officer or to Kenny, it would be a justification of that part of the defamatory article; but if she did so the next morning to Mrs. Caulfield, it would not be.
Defendant’s counsel requested the court to instruct the jury if the wife made such accusation against her husband to Mrs. Caulfield the next morning at the house, that it would be a justification of that part of the defamatory article. This the court refused and an exception was taken thereto. Mrs. Caulfield testified that next morning Mrs. Bopke in her own room told her that when she returned the night before, she listened at the door and heard this woman say to this plaintiff she was afraid Mrs. Bopke would come home and catch them, and he said she will not be back till later, and then she rushed in and caught them together on the bed. This instruction would have negatived the injurious effect of the judge’s charge that it was necessary to find that she had so stated to some one the night before on the bay side, before the defendant could claim the benefits of a justification. But then only in the event the jury believed the testimony of Mrs. Caulfield, and allowed intelligently the instruction. We think the defendant was entitled to have the harmful influence, of what appears to us an error as to the law of the defense of justification raised by the theory upon which this cause was submitted, so far corrected as this requested instruction would have done in case the jury believed Mrs. Caulfied.
We are convinced that when a newspaper publishes an article asserting on a certain night a married man, in his own house, had improper relations with a woman, and his wife so stated to a person that same night, and the newspaper, when sued for libel, proved to the satisfaction of the jury, by a fair preponderance of evidence, that this man *716 did have, on that night, improper relations with the woman in his own house, and his wife so stated to a person the next morning, but not the same night, that then the plea of justification has been made out; and the defendant is entitled to a verdict, so long as the law makes truth a defense to the publication of all defamatory language. The error underlying the theory upon which this case was tried and submitted to the jury, was largely attributable to the earnestness with which counsel for defendant contended all through the trial for the application thereto of the long repudiated rule founded on the dictum in the Earl of Northampton Case, which naturally tended to mislead the judge in the haste of a trial to assent to his contention, so far as to make it a requisite to his defense to prove the correctness of the report of the alleged interview of plaintiff’s wife with an officer in which she charged her husband with improper relations with a woman, in addition to the truth of the charge- of improper conduct itself. The counsel for the other party not objecting.
We are of the opinion that, for the foregoing reasons, without considering the other points raised by defendant, the judgment and order denying new trial ought to be reversed and new trial ordered with costs to. abide the event,
Osborne, J., concurs.